## Megee *versus* Beirne.

26 SC ³383

*Qualified Property in Personal Chattels attachable.—Proceedings in Attachment, Effect of, on Real Owner.—Sale of Goods attached as Chargeable or Perishable.—Rights and Remedy of Real Owner.*

1. Where A. delivered cattle to B., to handle and graze them for one year, under an agreement that he should receive all that they might produce on sale, over and above the first cost and interest, B. had a qualified property in the herd while in his possession, which was attachable by his creditors.

2. But upon redelivery, B.'s right to compensation for the year's grazing became a personal right only, unaccompanied by any lien, possession, or right of control, to give him property in the cattle, and his creditors could not levy an attachment upon them without becoming liable to A. as trespassers.

3. Under the Pennsylvania statute, foreign attachment is not strictly a pro-ceeding *in rem;* and therefore the final judgment in the attachment, though conclusive as to parties and privies, did not conclude all the world as to B.'s ownership in the cattle.

4. Where the goods attached are ordered to be sold as perishable or charge-able, the title of the purchaser at such sale is indefeasible and unquestion-able, whoever the former owner may have been, the order and sale being a proceeding *in rem;* but the sheriff, as defendant in an action of trespass by the real owner, cannot justify the taking of the goods on the ground that by this peculiar rule of law, the title of his vendee was validated.

[Megee v. Beirne.]

5. There is no rule of law which compels the real owner of attached property, on notice of the suit, to intervene and defend *pro interesse suo*, on pain of forfeiting his rights of property or of action.

ERROR to the District Court of *Philadelphia*.

This was an action of trespass *vi et armis*, brought to July Term 1860, by Oliver Beirne against George Megee, late sheriff of the county, and grew out of the seizure by him of a drove of one hundred and ten cattle, under a writ of foreign attachment, issued out of the District Court for the city and county of Philadelphia, at the suit of John Hopkins against Andrew Beirne.

Andrew Beirne, a resident of Monroe county, Virginia, was the maker of a promissory note for $2775.35, which had been protested for non-payment, and was held by Mr. Hopkins, of Baltimore, and it was to recover the amount of this note that the proceedings in foreign attachment were instituted. The writ was issued on the 16th of October 1858, and commanded the sheriff " to attach a lot of cattle in the hands or possession of Alexander R. Humphreys, and summon him as garnishee." In obedience thereto, the cattle in question were attached by the sheriff at a drove-yard in West Philadelphia, and Mr. Humphreys, who was offering them for sale, was summoned as garnishee.

Alexander R. Humphreys had for many years been known as the agent or factor of Beirne, for the sale of his cattle. A few weeks before, Humphreys had taken another drove from the same herd to Baltimore, where he represented them to be the property of Andrew Beirne. He declared his intention of applying the proceeds of their sale to the payment of the very note on which the foreign attachment suit was afterwards brought, should he ascertain that he had endorsed the note, which, however, was not the case. He made the same representations as to the ownership of the drove that was attached, and it was from information derived from him that the keeper of the drove-yard pointed them out as the cattle of Andrew Beirne, to the officer having the writ of foreign attachment.

Andrew Beirne himself had been in Philadelphia some weeks before the arrival of the cattle, had visited the drove-yard, and had made inquiries about the condition of the cattle market, stating that he had cattle on the way for sale here. He had also borrowed from Messrs. Haddock, Reed & Co., of this city, the sum of five thousand dollars, promising that Mr. Humphreys should repay the amount out of the proceeds of the sale of his cattle which would shortly arrive.

When the writ of foreign attachment was served, Humphreys said nothing about *Oliver* Beirne being the owner of the cattle. Such was the testimony of the sheriff's officer, and of the keeper of the drove-yard, although denied by Humphreys. He aban-

[Megee *v.* Beirne.]

doned the cattle to the sheriff, and immediately returned to Monroe county, Virginia.

On the 8th of October 1858, on affidavit that the cattle were chargeable, the court made an order for their sale, under which they were sold at auction for $3835.68, which fact was included in the return to the writ. On the 1st of January 1859, in obedience to a rule requiring it, the sheriff paid into court the sum of $3558.31.

On the 21st of September 1859, judgment was entered against the defendant in default of appearance, and the damages assessed at $3343.65. A *scire facias* was then sued out against the garnishee, on which, on two returns of *nihil*, there was judgment for the amount of the judgment on the foreign attachment, with interest and costs. An execution against the garnishee was then awarded, which was returned *nulla bona*. On the 5th of May, the plaintiff's recognisance to restore was filed, and the money in court applied to the payment of the judgment on the *scire facias*, with interest and costs.

This action of trespass was commenced November 6th 1858, by Oliver Beirne, who claimed that he and his brother Andrew were the owners of the cattle which had been attached at the suit of Mr. Hopkins.

On the day when the cattle were sold, *James W. Paul*, Esq., as attorney for Oliver Beirne, gave notice to the sheriff that the cattle belonged to said Oliver, and that he would be held responsible if he retained or proceeded to sell them.

The declaration contained four counts, each charging the defendant with seizing and carrying away a number of cattle belonging to the plaintiff. The defendant pleaded "Not guilty," and the following special plea: "And for a further plea in this behalf, by leave of the court, &c., the said defendant further saith, that, heretofore, and before the said time when, &c., to wit, on the 16th day of October, A. D. 1858, one John Hopkins sued and prosecuted out of this court a certain writ called a foreign attachment, directed to the sheriff of Philadelphia county, by which said writ the said sheriff was commanded to attach the said Andrew Beirne, by all and singular his goods and chattels, lands and tenements, in whose hands or possession soever the same might be, so that he be and appear before this honourable court, to be holden at Philadelphia, the first Monday of December then next, to answer the said John Hopkins of a plea of trespass in the case, &c. ; and that he summon all persons in whose hands or possession the said goods and chattels, or any of them, may be attached, so that they and every of them be and appear before the said court, at the day and place aforesaid, to answer what might be objected against them, and abide the judgment of the court therein : and by which said writ the said

[Megee v. Beirne.]

sheriff was further especially commanded to attach a lot of cattle in the possession of one Alexander R. Humphreys, and summon him as garnishee, and that the said sheriff should have then there that writ, which said writ afterwards and before the return (day) thereof, to wit, on the day and year last aforesaid, was delivered to the said now defendant, who then and from thence, whilst the said writ was in force, was sheriff of the said county of Philadelphia, to be executed in due form of law: by virtue of which said writ the defendant, so being sheriff, as aforesaid, afterwards, to wit, at the said time, when, &c., in obedience to the said writ, seized and took the said lot of cattle, viz.: one hundred and ten cattle, then being in the possession of the said Alexander R. Humphreys, and then and there summoned the said Humphreys to be and appear before the said court at the day and place aforesaid, to answer as in the said writ directed; and the said one hundred and ten cattle are the same goods and chattels in the said declaration mentioned and referred to, and no other; and afterwards the said defendant being sheriff, as aforesaid, did, by virtue of and in obedience to an order of this honourable court, sell the said one hundred and ten cattle, by public sale or vendue, and by virtue of and in obedience to the same order, paid the net proceeds thereof into this court, and duly returned the said writ accordingly, which are the supposed trespasses in said declaration mentioned, of all which proceedings the said plaintiff had due notice—and this the defendant is ready to verify."

To this special plea the plaintiff demurred, and assigned the following causes of demurrer: "The same (plea) is defective as an argumentative general issue, and in substance, because it does not allege that Andrew Beirne, against whom the writ issued mentioned in the plea, was at any time the owner of, or interested in the said goods and chattels, for the taking of which the action is brought, and also for that if the facts in the plea mentioned were at any time or under any circumstances a justification of the taking, then the plea is no more than the general issue, and should be pleaded as such; and also, because no material fact is traversed, nor is any alleged, which avoids the matter alleged in the declaration."

The demurrer was sustained, and the case therefore went to the jury on the plea of "Not guilty."

On the trial, the plaintiff offered evidence that he had purchased, in September 1857, from Alexander R. Humphreys, a herd of five hundred and seventy-seven cattle, for the sum of nineteen thousand three hundred and sixty-nine dollars; that the cattle attached were part of this herd; that the following agreement was executed at the time, and indicated the object of the purchase:—

"Agreement made and entered into this 17th September 1857,· between Oliver and Andrew Beirne : the said Oliver has furnished five hundred and seventy-seven stock cattle, at a cost of nineteen thousand three hundred and sixty-nine dollars; now the said Andrew undertakes to handle and graze the same for the fall market of 1858, when the said cattle are to be sold, and the pro-· ceeds of said sale are first to be applied to the payment of the purchase-money of said cattle, with interest thereon from this date, and the balance thereof to the payment of the debt and interest now held by said Oliver against said Andrew.   Witness our hands and seals on the day aforesaid.

ANDREW BEIRNE.    [SEAL.]
OLIVER BEIRNE.    [SEAL.]"

That, in compliance with this agreement, the cattle were grazed on Andrew Beirne's plantation, and taken charge of by his servants until they were driven to market in the summer and fall of 1858.   The principal witness for the plaintiff was Humphreys himself, who testified that the whole herd was originally purchased from him by Oliver Beirne, at the price mentioned in the foregoing agreement; that the purchase was made at Andrew Beirne's farm, where the cattle had been driven; that the drove referred to as having been offered for sale in Baltimore, was sold by him on account of Oliver Beirne; that of the net proceeds, he had paid four thousand dollars to Oliver Beirne, and by the direction of Oliver had left six hundred dollars in the Bank of Monroe County for Andrew, to defray the expense of sending the next drove to market; that the next drove was that which was attached; that, before leaving Monroe county to sell this drove, Oliver Beirne had taken him to his house, and showed him the agreement between his brother Andrew and himself, and explained to him that the profit made by the sale of the cattle was to be credited on Andrew's bond; and that he (the witness) was employed to sell these cattle on commission solely by Oliver Beirne, and was accountable to him only.   It appeared from the testimony of other witnesses, as well as that of Humphreys, that the brothers Beirne resided within eight miles of each other; that Andrew owned a tract of some seven thousand acres of land well adapted and used for grazing, on which for many years before 1857, he had annually grazed for market from four hundred to six hundred head of cattle; that he was involved in debt; and that his brother Oliver, who was a retired merchant and a man of great wealth, was his creditor to the amount of fifty thousand dollars, to secure which debt a portion of Andrew's estate had been conveyed in trust.

The defendant's counsel requested the court to instruct the jury,

[Megee v. Beirne.]

1. That this action cannot be maintained, if the cattle attached by the sheriff were, when attached, in the possession of Alexander R. Humphreys, as consignee, for the purpose of sale on commission.

2. That the writ of foreign attachment in Hopkins v. Beirne, justified the seizure of the cattle by the defendant, as sheriff, and therefore the verdict should be for the defendant.

3. That, under the agreement between Oliver Beirne and Andrew Beirne, given in evidence on the part of the plaintiff, Andrew Beirne had an interest in the cattle at the time of the seizure by the defendant, as sheriff, that was attachable under the writ of foreign attachment in Hopkins v. Andrew Beirne, and that therefore the verdict should be for the defendant.

4. That, if the jury should believe that the seizure of the cattle by the defendant, as the property of Andrew Beirne, was induced by the representations and statements of the plaintiff's agent, that the cattle were the property of Andrew Beirne, their verdict should be for the defendant.

5. That, if the jury should believe from the evidence, that the agreement between Oliver and Andrew Beirne was intended to secure Oliver Beirne the payment of the price, whilst the possession and ownership of the cattle were in Andrew Beirne, their verdict should be for the defendant.

6. That the omission of Oliver Beirne, when notified of the pendency of the foreign attachment against Andrew Beirne, and of the seizure of the cattle by virtue thereof, to present his claim to the said cattle for adjudication in that suit, precludes his recovery in this action.

7. That the judgment rendered against Alexander R. Humphreys, as garnishee of Andrew Beirne in the foreign attachment suit, is conclusive evidence of Andrew Beirne's ownership of the cattle; and that therefore the verdict should be for the defendant.

8. That the defendant, in selling the cattle on the 25th October 1858, was acting in obedience to an express order of the court, and was not bound to regard the notice made on the morning of the sale on behalf of Oliver Beirne; and the sheriff is not responsible for the said sale.

9. If the cattle had been the property of Oliver Beirne, it was his duty, on being informed of their seizure, to have applied to the court for leave to intervene in the foreign attachment suit, in order that his claim to the cattle might be adjudicated; and his rights would have been properly adjudicated therein.

10. When Oliver Beirne received notice of the seizure of the cattle, and that they were about to be sold, if he had the right to prevent the sale, he ought to have made an application to the court to rescind the order made for their sale, or for a postpone-

[Megee *v.* Beirne.]

ment of the time of sale; but the sheriff is not responsible in the suit for the sale of the cattle.

The court declined affirming any of the defendant's points.

Under the charge of the court below, there was a verdict and judgment in favour of the plaintiff for $5018.82, whereupon the defendant sued out this writ, and assigned for error here the refusal of the court below to affirm the points as above given, and the entry of judgment for plaintiff on the demurrer to defendant's special plea.

*James E. Gowan* and *Samuel Hood*, for plaintiff in error.— 1. In support of the first point cited and relied on: 1 Ch. Pl. 168–9; Com. Dig. *Trespass*, B. 4; Corfield *v.* Coryell, 4 W. C. C. R. 387; Fitler *v.* Shotwell, 7 W. & S. 14; Ward *v.* Macaulay, 4 T. R. 489; Hall *v.* Pickard, 3 Camp. 136; Paine *v.* Whitaker, 1 Ry. & M. 99; Bloxham *v.* Saunders, 4 B. & C. 941; Gorden *v.* Harper, 7 Term R. 9; Putnam *v.* Wyley, 8 Johns. 432; Van Brunt *v.* Schneck, 11 Johns. 377. Plaintiff had no right to rescind the contract with his agents when the attachment was served, and therefore cannot maintain this action: Story on Agency, §§ 14, 401, 477; Hunt *v.* Rousmanier's Administrators, 8 Wheaton 174; Chitty on Contracts 214; Smythe *v.* Craig, 3 W. & S. 14; Raleigh *v.* Atkinson, 6 M. & W. 676. The measure of damages is the mere value of the goods: Wooley *v.* Carter, 2 Halst. 86; Floyd *v.* Brown, 1 Rawle 121; Fox *v.* Kensington, 3 W. & S. 106; Rogers *v.* Fales, 5 Barr 154; McElrath *v.* Kintzing, Id. 336. The verdict here was for full price, without any deduction for commissions, thus giving damages beyond plaintiff's interest as claimed by him; more than he could have recovered if the alleged trespass had never been committed: See Gorden *v.* Harper, 7 Term R. 9.

2 and 11. These two points are alike, and raise the question of justification by the writ, which was embodied in the demurrer. The matters therein alleged were not evidence under the general issue, which, in trespass *vi et armis*, restricts the defence to narrow limits: Step. on Pl., pl. 5, Am. ed.; Milman *v.* Dolwell, 2 Campb. 379; 1 Ch. Pl. 501–2; McBride *v.* Duncan, 1 Wh. 269; 2 Greenl. Ev., § 625. The plea was not intended to traverse the ownership as laid in the *narr.*, but to confess and avoid by a justification under the writ, which was a proper defence: Watson on Sheriff 53; Belk *v.* Broadbent, 3 Term R. 185. His duty was not to ascertain the ownership, but obey the writ.

3 and 5. In support of these points the learned counsel cited Jenkins *v.* Eichelberger, 4 Watts 122. The sale under the agreement in evidence, if not absolute, was conditional between the parties, but was absolute as against creditors of vendee: Martin

v. Mathiot, 14 S. & R. 214; Rose v. Story, 1 Barr 190; Stiles v. Whitaker, Phila. R. 271.

But if this were not so, the agreement created a partnership between these brothers, which rendered the cattle liable to attachment for a private debt of one of the partners: Morgan v. Watmough, 5 Wh. 125. Even if the court could not say that there was an attachable interest in Andrew Beirne, there was enough in the evidence to authorize the submission of the point of interest to the jury. The acts and declarations of the party were for the jury: Babb v. Clemson, 10 S. & R. 412; Thompson v. Franks, 8 Leg. Int. 193.

4. In support of this point they cited Russell on Factors 100; Story on Agency, § 420; Waters's Appeal, 11 Casey 523.

The remaining points relate to the effect of the proceedings in foreign attachment, or the right of the plaintiff below to recover, under which they argued,

1. That the judgment in the attachment that the cattle were the property of Andrew Beirne, estopped Oliver Beirne from denying it. It is a proceeding *in rem*, a process to determine the status of the property attached. If it belonged to defendant, it is condemned, if not, it is discharged. This is the reason for summoning the garnishees: Taylor v. Carryl, 12 Harris 267; 1 T. & H. Pr. 370; 4 Rawle 109; 2 Id. 37; 4 Binney 61; 9 Vin. Ab. 419, tit. *Interpleader;* Brooks's Abr., same title; McMunn v. Carothers, 9 Pa. Law J. 134. This is the reason why he was protected by the judgment: McDaniel v. Hughes, 3 East 367; Holmes v. Remson, 20 Johns. 229; Stevens v. Gaylord, 11 Mass. 256; Embree v. Hanna, 5 Johns. 101; Anderson v. Young's Executors, 9 Harris 443; Hull v. Blake, 13 Mass. 153; Moore v. Spackman, 12 S. & R. 287; Hunter v. Potts, 4 Term R. 182; Sill v. Worswick, 1 H. Bl. 665; Phillips v. Hunter, 2 Id. 402; 1 Starkie's Ev. 522; 1 Greenl. Ev., § 523; Peterson v. Lathrop, 10 Casey 228; Coates v. Roberts, 4 Rawle 100; Hammer v. Griffith, 1 Grant's Cases 193. See also, 6 Mass. 277; 1 Binn. 299; 4 Cranch 434; 3 Sumner 600; 23 Miss. 35; 2 W. Bl. 977; 3 Wheaton 246.

*R. C. McMurtrie* and *James W. Paul,* for defendant in error. —The points made by the plaintiff in error are,

1. Whether trespass lies.

2. Whether the writ justified the sheriff.

3. Whether, under the contract between Oliver and Andrew Beirne, there was, at the time of the seizure, an attachable interest in Andrew which justified the sheriff.

4. Whether the evidence showed that the agreement was intended to give the ownership in the cattle to Andrew, and reserve a lien for Oliver.

[Megee *v.* Beirne.]

5. Whether an estoppel results from the statements of the agent, and

6. The effect of the judgment, &c., in the foreign attachment, in barring the action.

I. In support of the position, that trespass lies by a general owner, they cited and relied on Holly *v.* Huggerford, 8 Pick. 73; Sibley *v.* Brown, 3 Sheply 185–8; Overly *v.* McGhee, 15 Ark. 459; Lathrop *v.* Arnold, 28 Maine 138; Keyas *v.* Howe, 18 Verm. 412; Browning *v.* Skillman, 4 Zab. 351; Tufts *v.* McClintock, 28 Maine 424; Codman *v.* Freeman, 3 Cush. 306; Railroad Co. *v.* Hughes, 1 Jones 141, 146; Lelar *v.* Brown, 3 Harris 215, 217; Gillett *v.* Ball, 9 Barr 13; Dallam *v.* Fitler, 6 W. & S. 325; Read *v.* Rawlinson, 2 B. & P. 59; Putnam *v.* Wiley, 8 Johns. 435; Ward *v.* Andrews, 2 Chit. 636; Cox *v.* Ghee, 5 C. B. 542; White *v.* Morris, 11 C. B. 1015; Mahew *v.* Luttle, 4 E. & B. 347; Lucas *v.* Noskels, 4 Bing. 729; 1 Cl. & F. 438; Thorp *v.* Busling, 11 Johns. 285; Gorden *v.* Harper, 7 Term R. 12; 2 Sand. 47.

II. As to whether the writ justified the sheriff, they answered, the writ does not command the attachment of these particular goods. The direction for this is endorsed on the writ signed by plaintiff's attorney, which does *not* justify it. Even a writ is no justification without a judgment authorizing it: White *v.* Morris, 11 C. B. 1015; Shipman *v.* Clark, 4 Denio 446; Lathrop *v.* Arnold, 28 Maine 138; Cross *v.* Phelps, 16 Barb. 502; Bradford *v.* McLellan, 10 Shep. 302; Townsend *v.* Newell, 14 Pick. 332; Green *v.* Sharer, 3 Humph. 141; 6 Id. 153; Butler *v.* Borden, 6 Blackf. 160; Hutchinson *v.* Dull, 17 Verm. 133; Sibley *v.* Brown, 3 Shep. 186.

III. As to the agreement between Andrew and Oliver Beirne, they argued that as the cattle had been surrendered by Andrew to Oliver before the writ issued, all right by way of lien was out of the case. That, as Oliver, a creditor of Andrew, had bought the cattle, employed Andrew to fatten them, agreeing to give him credit on his claim to the extent of the enhanced value, and received them again at the completion of the contract to be sold, there was neither a sale, a conditional sale, nor a partnership between them, or any interest remaining in Andrew: Leigh *v.* Field, 8 W. & S. 232. The contract here was not for title, but for increased value: McCullough *v.* Porter, 4 W. & S. 177.

If the court below had affirmed this point, then the jury would have been at liberty to give to the contract a construction directly the reverse of what it meant. But the question of fraud as against creditors, was fairly submitted in the general charge, which was not excepted to.

Nor was there any evidence to sustain a charge of fraud, for the testimony showed the purchase and payment by Oliver; the

[Megee v. Beirne.]

contract to fatten by Andrew; a delivery to Oliver's agents when completed; a sale and receipt of the price by him of part of the cattle; and possession by one employed by him to sell; against which there were only the acts and declarations of an agent, without the knowledge of the owner, not acted on by any one.

V. As to whether an estoppel resulted from the statements of the agent, they argued that an estoppel *in pais* went no further than to protect to the extent that a party is misled; that it required a statute to validate a pledge by a factor for sale to a *bonâ fide* lender: Newbold *v.* Wright, 4 Rawle 195. A verbal misstatement does not conclude, especially after notice of the truth.

VI. As to the effect of the judgment in the attachment, they argued that the action was only *quoad in rem*, not strictly so: Stedman *v.* Perkins, 42 Maine 130. It is *in rem*, so far as the defendant in the writ is concerned, and also to protect the garnishee from the real owner, but not as to the right of property, or the right of the real owner as against him who sets the process in motion, or his indemnified agent, the sheriff: Serg. on Att. 11, 14, 15; 7 Peters 621. It is no more *in rem* than a *fi. fa.*; the language of both writs, and the action of the officer under them, is similar.

The analogous cases of *sci. fa.* on mortgages, &c., were referred to, where only parties and privies, not strangers or persons not served, are affected; Dengler *v.* Richner, 1 Harris 38; Cohoon *v.* Hollenbach, 16 S. & R. 425; Christine *v.* Manderbach, 2 Barr 363; Anshutz *v.* McClelland, 5 Watts 487. See also, 2 Smith's Lead. Cases 688. As to the liability of the sheriff, they cited 7 Peters 621; 5 Binn. 457; Serg. on Att. 185; Lucas *v.* Laws, 3 Casey 211; McCullough *v.* Grisholler, 4 W. & S. 202; Corson *v.* Craig, 1 W. C. C. R. 424; Banks *v.* McCall, 3 Binn. 338; McIntire *v.* Hodgson, 9 Barr 468; Coates *v.* Roberts, 4 Rawle 100; Moore *v.* Spackman, 12 S. & R. 287; Foster *v.* Sweeny, 14 S. & R. 386; Overly *v.* McGhee, 15 Ark. 459. That the owner was not bound to intervene, they showed from the fact that neither the statute, the practice, nor the authorities required it, and that the remedy, viz., the security given before the writ issued, was inadequate.

The opinion of the court was delivered, May 6th 1861, by

WOODWARD, J.—If the herd of cattle had been seized as the property of Andrew Beirne, whilst he had them in his possession under the agreement of 17th September 1857, we should strongly incline to the opinion that his interest under that paper, coupled with the actual possession, was an attachable interest. They were young cattle. Oliver purchased and delivered them to Andrew in the fall of 1857, to handle and graze in preparation

[Megee *v.* Beirne.]

for the fall market of 1858. A year's growth and development at Andrew's expense were contemplated. When sold, he was to receive, in a credit on his general indebtedness to Oliver, all they produced over and above the first cost and interest. As mere agistor, Andrew would have had a lien upon the herd; but under the agreement he had at the least a qualified property. Perhaps, indeed, it would not be stating his position too strongly, to say that he was the purchaser and owner of the cattle, subject only to pay the purchase-money and interest to Oliver—that he was a mortgagor in possession, and Oliver merely a mortgagee of a chattel without any possession.

Now, although a chattel mortgage is good in Virginia, where these brothers belong, without possession in the mortgagee, yet the law is otherwise in Pennsylvania. With us it is fraudulent and void as to creditors, though valid as between the parties. Can it be questioned that Andrew could have made a valid sale of the cattle, or that they might have been seized for his debts? However we construe the paper of 17th September 1857, and define Andrew's rights under it, we cannot doubt that whilst he had the herd in possession, a creditor might have levied his attachment without becoming liable to Oliver as a trespasser.

But Hopkins did not lay his attachment whilst Andrew held the cattle under that agreement. According to the evidence, they had been redelivered to Oliver's factor or agent, who had them in the Philadelphia market, for sale on Oliver's account, at the moment the attachment was laid. Humphries represents himself as Oliver's agent,—not Andrew's. The cattle, therefore, had gone back into the possession of the former owner, or mortgagee, if Oliver be regarded as such; and although Andrew would be entitled to compensation for the year's grazing, by a credit of the net profits of the sale, yet this was a mere personal right, enforceable only by an action at law, and unaccompanied by any lien, possession, or right of control that gave him a semblance of property in the cattle. A vendee of real estate even, by articles of agreement, may rescind his equities by parol, and reinvest the vendor with his full rights of property, by restoring the possession to him. And shall less be said of an uncompleted purchase of chattels? Putting Andrew's rights under the agreement into the strongest light they will bear, it seems to us that they ceased to be rights of property in specie when he redelivered the cattle to Oliver's agent to be driven to market and sold. Thenceforth they consisted merely of a right to be paid for his pasturage, according to the proceeds of the sale.

Counsel argue, however, that Humphries was Andrew's agent—that he represented himself as such in the market, and that he offered the cattle as the property of Andrew. Why was not the court asked to submit the question to the jury? Humphries'

[Megee *v.* Beirne.]

declaration and his testimony, were fairly open to criticism, and it is reasonable to presume that both were fully discussed before the jury. Nor is the court complained of for not fairly submitting his credibility. We must take it then that Humphries' declaration that he was acting for Oliver was either acquiesced in or else that it was found to be true by the jury, and, *quacunque via detur*, the cattle must be regarded as Oliver's, as bought and paid for by him—as bailed to Andrew for a year's agistment, and as returned to Oliver as his several and exclusive property. Had he never let them to Andrew for pasturage, or had he employed some other farmer to perform the same service, his rights of property could have been no more absolute and entire.

Such, we are compelled to say, was the apparent *status* of this property on the 16th of October 1858, when Hopkins took his writ of foreign attachment against Andrew. Nor are we permitted to surmise that, notwithstanding fair appearances, the two brothers and Humphries were in combination to cloak Andrew's rights of property from his creditors; for counsel for defendant in error say, without contradiction, that the judge submitted that question fairly to the jury, and an extract from the charge is furnished in the argument to verify the assertion. It is not in the bill of exceptions, it is true, for as bills are framed in the District Court, we never get a full view of what is ruled; but if it was not submitted as alleged, it was because no proper point was put to the court on the subject by the plaintiff in error. It is not our duty, therefore, to reverse the judgment in order to give him an opportunity to obtain a submission of that question.

If the position of the property at the date of the attachment was as above stated, then the conclusion follows inevitably, that the attachment was not well laid. The command of the writ was to attach Andrew Beirne by all and singular *his* goods and chattels, &c. The writ contained no authority to seize Oliver Beirne's goods. Counsel endorsed a direction to the sheriff to attach a lot of cattle in the hands and possession of Alexander Humphries, and to summon him as garnishee: but the sheriff proceeded, as he always does, at his peril. He attached the cattle as Andrew Beirne's, and, under a subsequent order of court for the sale of them as chargeable, sold them and brought the money into court. Hopkins, having obtained judgments by default against both the defendant and the garnishee in the attachment, took the amount of his debt out of the proceeds of the sale.

To this action of trespass brought by Oliver Beirne against the sheriff, there was not only the general issue pleaded, but a special plea also, setting forth the writ of attachment as his justification, to which the plaintiff demurred. To say nothing about the alleged defects of the special plea, and to regard it as

[Megee *v.* Beirne.]

a sufficient plea and profert of the whole record of the foreign attachment, we come directly to the main point of the argument on behalf of the plaintiff in error, that the foreign attachment was a proceeding *in rem*, which after final judgment, concludes all the world as to Andrew Beirne's ownership of the cattle, and that there is peculiar equity in estopping Oliver Beirne from questioning Andrew's title, because he had notice of the foreign attachment before the sheriff's sale, and should have intervened to defend for whatever interest he had.

The doctrine that was much discussed in the case of Taylor *v.* Carryl, first reported in 2 Am. Law Rep. 333, then in 12 Harris 259, and finally in 20 Howard's U. S. Reports, is attempted to be applied here, but without success. It was an action of replevin, brought for the recovery of a specific chattel—a ship—the "Royal Saxon." Each party claimed title by virtue of a judicial order for the sale of the ship as perishable and chargeable— one under the order of the District Court of the United States sitting in admiralty, in a proceeding by libel, for seamen's wages; the other under an order of the Supreme Court at Nisi Prius, in a proceeding by foreign attachment. The question of title depended mainly, though not entirely, on the respective jurisdictions of the Federal and State courts. But it was altogether a question of property between the vendees of the marshal and the sheriff. And that was the circumstance which distinguishes that case radically from the present. For here there is no question whatever raised upon the effect of the sheriff's sale, or upon the title of his vendee. On the contrary, the plaintiff's action proceeds on the assumption that the sheriff conferred a valid title. That is the gist of the action. Reduced to an interrogatory form, the plaintiff's action demands of the sheriff, why did you seize and sell my property past recovery, on a writ against another man? What is the answer? Simply that the plaintiff is estopped from denying Andrew Beirne's ownership of the cattle by the record of the foreign attachment.

The cases will not bear out this defence. Foreign attachment is not purely a proceeding *in rem*, but under our statutes it is the equivalent of a summons for commencement of a personal action. They contemplate, however, only a seizure of the defendant's goods as a mode of compelling his appearance, and they limit the effect of all judgments in attachment, whether against the defendant or his garnishees, to such property as belongs to the defendant. The judgment concludes parties and privies, but not strangers. It is not true of a judgment in attachment that it authorizes the plaintiff to seize a third party's property for the defendant's debt. In 2 Smith's L. C., Am. ed., page 689, *et seq.*, the cases on this head will be found collected, and their result stated to be that, properly speaking, proceedings by attach-

[Megee v. Beirne.]

ment are not *in rem*, but are rather proceedings against the interest of the defendant and those claiming under him in the thing attached.

If it be said that it is settled law that where goods have been attached and then ordered to sale as perishable or chargeable, the title of the purchaser at such sale is indefeasible and unquestionable, whoever the former owner may have been, let it be granted that such judicial order and sale is a proceeding *in rem*, though the judgment in the attachment is not. What was pleaded here was not that special proceeding *in rem*, which in an action of replevin or trover would have concluded the plaintiff, but the judgments against the defendant and garnishee in foreign attachment, which conclude only parties and privies. In replevin, special goods are directed to be taken without regard to ownership, the title being left to be contested in the suit. Under a judgment and execution, the defendant's goods only are directed to be taken, that the plaintiff may make his money out of them: Shipham *v.* Clark, 4 Denio 446. In making title in replevin, a judicial sale of goods as chargeable, avails much—in such an action as this, nothing. The sheriff cannot justify his trespass on the ground that a peculiar rule of law validated the title of his vendee.

But it is said farther, that Oliver, having had notice of the suit against his brother, ought to have intervened to defend *pro interesse suo*. I confess I think so. That is exactly what an owner ought to do who knows that his goods have been attached as the property of another, and who has an opportunity to come in to defend. It prevents circuity of litigation, and annoyance to officers and other innocent parties. But we know of no rule of law that compels him to come in on pain of forfeiting his rights. If a sheriff will seize one man's goods on process against another, the right of the owner to hold the officer responsible in this present form of action, is part of the law of property, and it cannot be denied to the suitor. Nor is the fact that the seizure was made whilst the property was in the hands of a factor, any better answer to the plaintiff than the other, that he did not intervene when he might. His right of action is unimpaired by any of these circumstances, and must be sustained, now that it is asserted in the forms of law.

The only case to which the counsel of the plaintiff in error have been able to point as sustaining the special plea, is that of Scott *v.* Sherman, 2 Wm. Blackstone's R. 977. That was an action of trespass against custom-house officers, for entering the plaintiff's house and carrying away some wines called Geneva, which had been removed that morning from the plaintiff's ship to his dwelling, and which constituted part of the ship's stores. The defendants gave in evidence a record of condemnation of the

[Megee *v.* Beirne.]

Geneva in the Court of Exchequer at a prior term. The Court of King's Bench held the plaintiff could not recover, because the property of the goods being changed and irrevocably vested in the Crown by the judgment of condemnation, it followed, said Judge Blackstone, as a necessary consequence, that neither trespass nor trover can be maintained for taking them in an orderly manner. For the condemnation has a retrospect and relation backwards to the time of the seizure. It was added also, that as he knew of their seizure, and had notice of the condemnation by two proclamations according to the course of the court, it was the plaintiff's duty to have put in his claim, and neglecting this, "he shall be for ever barred by the condemnation, not only with respect to the goods themselves, *but every other collateral remedy for taking them.*"

I know of but one answer to the authority of this case—that is, that the seizure and condemnation of the goods under the revenue laws was strictly a proceeding *in rem*, and therefore concluded all the world both as to title and collateral action; but for that reason it is not applicable to a proceeding by foreign attachment under our statutes, which, I repeat, is not strictly a proceeding *in rem*. If counsel could have sustained their main proposition, that Hopkins's attachment was a proceeding *in rem*, that authority would have been in point. Without that postulate the authority is irrelevant.

There are other points in this case, but they are not of controlling importance, and may be passed without special remark. On the whole we think the demurrer was properly sustained, and the judgment is

Affirmed.