## Case No. 3,871.

### In re DEY.

### [9 Blatchf. 285.][1]

### Circuit Court, S. D. New York. Jan. 3, 1872.

#### MECHANICS' LIENS—MORTGAGES—PRIORITY—BANKRUPTCY.

Under the mechanics' lien law of the state of New Jersey (Nix. Dig. 4th Ed., p. 571), A. performed labor and furnished materials in erecting a building on real estate of B. in New Jersey. Afterwards, B. executed a mortgage to C., on such real estate. After that B. was adjudged a bankrupt, on his own petition, in the district court for the southern district of New York, and an assignee of his estate was appointed. Thereafter, and within one year after the performance of such labor, A. filed his claim, under said law, in the office of the clerk of the county, in New Jersey, in which such building was situated: Held, that the lien of A. attached as of the time the labor was performed, and was superior to the lien of C. under his mortgage, and that the real estate, in the hands of the assignee in bankruptcy, was subject to such lien of A.

This case came up on a petition by Hewes and Phillips, and a petition by Uzal Cory, for the review of an order of the district court [for the southern district of New York] touching the distribution of the bankrupt's estate, which order excluded liens claimed by the petitioners severally under the law of New Jersey, known as the "mechanics' lien law." 3 Ben. 450 [Case No. 3,870].

John H. Strahan, for assignee in bankruptcy.

Morris S. Thompson, for mortgagees.

Wheeler H. Peckham, for Hewes and Phillips.

Joseph F. Randolph and B. F. Randolph, for Cory.

WOODRUFF, Circuit Judge. The petitioners respectively claim liens upon certain real estate of the bankrupt, in New Jersey, for work and materials done and furnished for the erection of buildings thereon, prior to the adjudication in bankruptcy, made

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

upon the application of the bankrupt, for which liens, after such adjudication, and within one year after the performance of the labor and the furnishing of the materials, they have respectively filed their claims in the office of the clerk of the county, in New Jersey, in which the buildings, &c., were situated. The assignee and certain mortgagees subsequent to the commencement of the building, insist that, by the filing of the petition in bankruptcy, the adjudication thereon, and the appointment of the assignee, intermediate the performance of the work, &c., and the filing of the claims of lien, the assignee takes title free of all such liens and claims, and that the mortgagees subsequent to the commencement of the building are let in, to the exclusion of such liens. The petitioners, on the other hand, insist, that, under the statute of New Jersey, they have liens which the bankrupt could not, by his proceedings in bankruptcy, divest. On the one hand, it is claimed, that no lien is created until the claim therefor is filed, and, therefore, that, when the property passed to the assignee in bankruptcy, no act of any creditor could thereafter create such lien. On the other hand, it is claimed, that the moment work is done, or materials are furnished, a lien attaches in favor of the creditor, which the proceedings in bankruptcy could no more divest than could any act of the bankrupt himself. Obviously, the question in contest depends upon the construction and legal effect of the statute of New Jersey; and it is settled, that, if any doubt appears to exist touching that construction and effect, this court must look to the decision of the courts of that state, if any there be, as its guide in determining the question. The construction given by the district court was deemed sustained by the case of Morris County Bank v. Rockaway Manuf'g Co., in the court of chancery of New Jersey (1 C. E. Green [16 N. J. Eq.] 150, 161), and the district judge states, in his opinion, that no decision of any court in New Jersey was cited, on the argument, in conflict with the views stated. I cannot doubt, that, had counsel called to the attention of court the numerous cases, some of which are below referred to, in which the judges of the courts of that state have declared their opinion upon this statute, a different conclusion would have been the result.

The 1st section of the act (Nixon's Dig. 4th Ed., p. 571) provides, that every building shall be liable "for the payment of any debt, contracted and owing to any person, for labor performed, or materials furnished, for the erection and construction thereof, which debt shall be a lien on such building, and on the land whereon it stands, including the lot or curtilage whereon the same is erected." Although it would have been unwise to leave this section to operate, without enacting other supplemental provisions touching the duration of the lien, the notice thereof to be given, and the manner of its enforcement,

it is not doubtful, I think, that, if there had been nothing more in the act, a party performing work, or furnishing materials, would, by virtue of this section, have a lien which it would be the duty of a court of equity to recognize and enforce. No language would make the intent more plain, to secure the creditor payment by a charge on the premises, to secure the debt eo instanti it was incurred, by making it then a lien. Such language in an instrument executed by the owner to the party performing labor or furnishing materials, would give the latter a lien in equity, which would be enforced, even though the legal title were not conveyed. Much more should the statute have that effect when, within its clear power and authority, it so enacts. What, then, is the effect of the subsequent provisions?

In the first place, it was obvious to the legislature, that the alienability of the property ought not to be too long hindered by the uncertainty which any proposed purchaser would feel in regard to the existence and amount of such debts; and, second, it was practically certain, that many of such debts would be paid, or otherwise secured, so that the creditor would neither desire nor need to assert his lien. It was, therefore, enacted (section 6) that the creditor "intending to claim a lien" shall, within one year after the labor is performed, or the materials furnished, for which such lien is claimed, file his claim in the office of the county clerk, containing the particulars specified in the statute, and that, when such claim shall not be filed in the manner or within the time aforesaid, or, if the same shall contain any wilful or fraudulent misstatement of the matters required to be stated, "the building or lands shall be free from all lien for the matters in such claim." It is claimed, that it is the filing of this claim which "constitutes" the lien upon the premises; that, until then, although the statute has enabled the creditor to acquire a lien, has given him the right to acquire such lien, no lien, in fact, exists until such claim is, in fact, filed; and that, although, by a subsequent section, if the claim be so filed, it relates back to the commencement of the building, and takes precedence of mortgages, or conveyances, or other liens, made or created after the commencement of the building, the lien itself has no existence until the claim is filed. This is giving to the provision requiring the claim to be filed a plain repugnance to the terms of the first section, which declares that the building shall be liable for the payment and the debt shall be a lien. In a large degree, it defeats the purpose of the act, which was to furnish an instant security while the work was in progress, on which laborers and material men might rely. Such a construction is not necessary to the giving of full force and effect to the provision itself. It was intended to operate, and it does operate, as a limitation of the time within which persons

desiring to assert their liens must place their claim in the proper office, within the inspection of purchasers and others; and it enabled them and the owner to know, and be protected by the assurance, that the various persons performing labor or furnishing materials, but not asserting liens, had been paid or otherwise provided for. In effect, it operated, as to all creditors, as a condition subsequent, defeating any pre-existing lien, and as a conclusive bar to the assertion thereof. This satisfies the language, and harmonizes both of the sections.

This construction is also in harmony with the subsequent 8th section, which provides, that, "when a claim is filed, agreeably to the provisions of this act, upon any lien created thereby, the same may be enforced by suit," commenced and prosecuted as directed in the act. As the premises are, by the previous section to be free of the lien, if the claim be not filed within one year, so, in the last-named section, it is provided, that, when filed, it may be enforced by suit; and, by necessary implication, if not filed, it cannot be enforced. This is not only consistent with the previous sections, but seems a necessary conclusion therefrom. The 11th section, in a pointed manner, indicates the intent of the legislature to make the liability and lien declared in the first section efficient beyond the control of the debtor or owner of the building, by providing that, when such suit has proceeded to judgment, a conveyance, in pursuance of a sale on the execution, shall convey the estate which the owner had in the land at, or at any time after, the commencement of the building, free from all subsequent estates or incumbrances by deed or mortgage, made by such owner, or any person claiming under him. This provision, read in connection with the previous sections, shows that it was not in the power of the owner to defeat the security provided to laborers and material men by the statute; that such security was to operate effectually from the time the building was commenced; and that the right of such creditors was prior in time to that of such subsequent grantees or mortgagees. It was conceded, by the counsel for the assignee, that, if the claim was filed within the year limited, the lien which he insists was then first constituted related back to the commencement of the building, and, when enforced, operated to hold and convey all the interest of the owner at that time, but, still, that, until the claim is in fact filed, no lien exists. I have already expressed the opinion that the first section gives the lien, and that the filing of the claim is not a condition precedent to the liability declared in that section, but only a condition subsequent, which operates to discharge or bar the assertion of the right which the first section confers.

Nothing can be more plain, however, than this. The first section confers a right, whether it be what is therein called, the liability of the building, or a lien on such building and the land whereon it stands, in the sense of a legal lien. In virtue of work performed and materials furnished, the creditor is secured the right, within one year, to file his claim, bring suit and sell the property, divested of all estates or incumbrances by deed or mortgage. This right is vested by the statute. Twice, in sections subsequent to the first, it is called the lien "created by this act"—that is, created not by the filing of the claim, but by force of the act itself. This right was vested in the creditor the moment he was brought within the scope of the statute. I do not deem it very material to enquire by what name this right is called, when the question is whether an adjudication in bankruptcy defeats it. Let it be conceded that it is only a right in equity to acquire a legal lien, or an equitable right. Whatever it is, it is absolute in the creditor. It is the security in reliance upon which he has performed the work, or furnished the materials, and is indefeasible by act of the debtor or owner, or those claiming under them by title subsequently acquired. Why, even in this view, should the title of the assignee in bankruptcy be held, in a court of bankruptcy, proceeding as a court of equity, to defeat that right? The reasoning of the counsel for the assignee is, in a high degree, technical. It overlooks the evident purpose of the statute to furnish security that will accompany the credit given. It fails to recognize the claim of the creditor as being even equitable. This case illustrates, in a marked manner, the utter subversion of the design of the statute, and the disregard of all equities resulting therefrom, by its operation on the subsequent mortgagees, who are here contesting these liens. Their mortgages are subsequent to the commencement of the building. It is conceded, and is expressly enacted, that the right of these petitioners, when they had filed their claims, was complete, perfect, and prior to those mortgages, and that, when duly prosecuted, a sale must follow, which would cut them off, and give the proceeds of sale to the holders of these mechanics' liens. What is the effect of the construction for which they and the assignee contend? It is not claimed that their title is not prior to that of the assignee; and the consequence is, under the order before us for review, that the mechanics' liens are excluded, the mortgages are sustained, and, in direct contravention of the purpose of the statute, the mortgages are to be paid by the proceeds of the property. Surely the design of the bankrupt law was not thus to affect the relations between these lien claimants and such subsequent mortgagees, and give the latter a preference, where the statute made their claims subordinate to those of the former. This incidental effect may not be a conclusive reason for rejecting the construction claimed, but it is a reason for doubting its correctness, and for adhering to

a more just and equitable view of the statute, if its terms will permit.

The case bears no analogy to judgments sought and obtained by creditors of an insolvent, with knowledge of such insolvency, in a struggle to obtain preferences in fraud of the bankrupt law, and which, as well as executions issued after petition filed, have been held inoperative, as against the title of the assignee. The right here asserted, according to the views above expressed, was acquired cotemporaneously with the performance of the labor and the furnishing of the materials, and, therefore, is free from any suggestion of such fraud upon the law.

It must be conceded, that the language of the 12th section furnishes plausible ground for the interpretation given to the statute in the district court, namely: "No debt shall be a lien, by virtue of this act, unless a claim is filed, as herein before provided, within one year from the furnishing the materials, or performing the labor, for which such debt is due." But that section is to be read in connection with the other provisions, and it is fully satisfied, while the prior indefeasible right of the creditor in equity, vested the moment the work is done, is sustained. It is enough, that no claimant can assert a lien, who has not filed his claim within the prescribed period. No case could arise under the statute, in which a lien could be successfully asserted, unless such claim was filed within twelve months. But, looking at the whole statute, it does not follow, that, if, before the lapse of twelve months, the state of the property and title, and the rights of all parties, became a proper subject of inquiry in the courts of New Jersey, they must say that parties heretofore performing labor, or furnishing materials, have no interest in the property, no rights arising and vested, entitling them to perfect their security, by complying with the statute within the time limited thereby.

The construction and legal effect of the act, as stated by the learned judges of the courts of New Jersey, seem to me clearly to support the validity of the lien claimed in this case. In Ayres v. Revere, 1 Dutcher [25 N. J. Law] 474, 480, 481, Green, C. J. (afterwards chancellor), in giving the opinion of the supreme court, says: "The beneficial design of the act must have been to enable parties interested, before the work was done, or materials furnished, to ascertain whether they must look to the responsibility of the builder, or may rely upon the security of the building itself." "The man who has furnished a brick, or a stone, or a plank, for the erection of the building, or who has labored a day in its construction, is secured his remuneration in full. * * * It reaches to the claims of mortgage and judgment creditors, and supersedes even these incumbrances, if created after the building is commenced, in favor of the subsequently created debts of a favored class of creditors." In Tomlinson v.

Degraw, 2 Dutcher [26 N. J. Law] 73, the same distinguished chief justice says: "Where the claim is filed within the time prescribed by the act, the statute makes the debt a lien on the building, and on the land whereon it stands. The lien attaches at the commencement of the building, or one year before the filing of the claim in the clerk's office." In Edwards v. Derrickson, 4 Dutcher [28 N. J. Law] 39, Vredenburgh, J. (pages 61, 62), regards the filing of the claim as in the nature of a bill in equity, and then says: "This statute gives to the plaintiff a right to file his lien, or bill in equity. if we choose to call it so, against the estate either of the original owner, or a subsequent purchaser or incumbrancer under him, and, as in case of the mortgagee in chancery, he sells only the estate of the person against whom he seeks, by his lien claim, to enforce his lien. * * * The fair meaning of the statute is, that the lien may be filed against any estate in the lands, either at the time of the attaching of the lien, or at any time afterwards before the lien is filed." In his opinion, the expression. "the attaching of the lien," is repeatedly used to indicate, not the time the claim is filed, but the time when the right accrued to the party. Chief Justice Green, in the same case (though he dissented from his associates on the question whether the claim filed in that case was sufficient to entitle the party to maintain the suit), says (page 75) on the subject now under consideration: "The lien attaches, and becomes a valid, subsisting incumbrance, at the time of the commencement of the building, and upon the estate of the then owner." After reciting section 11, he adds (page 76): "This language renders it very clear, not only that the lien attaches, at the commencement of the building, upon the estate of the then owner, but, also, that the said owner, against whom the suit is commenced, and who is to be specified in the claim filed, is the owner at the time the building is erected." In Gordon v. Torrey, 2 McCart. [15 N. J. Eq.] 112, 114, the same learned chief justice, now chancellor, says: "The lien attached at the commencement of the building, upon the estate of Torrey," the then owner. "A change of ownership does not affect the validity of the incumbrance." "The statute, in express terms, makes the debt a lien from the commencement of the building. The proceeding to enforce the lien is a proceeding in rem. It does not create the lien, any more than a proceeding and decree for the foreclosure of a mortgage creates the incumbrance. There is nothing in the statute which requires that the time of the commencement of the building, and the consequent attaching of the lien, should be specified, either in the lien or in the record of the judgment." The opinion of the same chancellor, in Morris County Bank v. Rockaway Manuf'g Co., 1 C. E. Green [16 N. J. Eq.] 150, 161, was supposed to support the claims of the assignee, but I think, on ex-

amination, it merely indicates what is above conceded, namely, that, unless the creditor asserts his lien, by filing his claim with the county clerk within twelve months after the work is done, &c., he has no standing in court thereon, and loses all right to enforce his lien. By the non-performance of that condition, his lien is defeated, and he has thereafter no lien on the premises. The chancellor was discussing various objections to the claims of certain parties, who were reported by the master as having liens, but who had not filed their claim with the county clerk, and he adds: "The radical objection is, that the claim was not filed according to the requirement of the statute, and constitutes, therefore, under the provisions of the law, no incumbrance upon the premises." The contest was between mortgagees and sundry lien claimants, and the purpose was to marshal the proceeds of sale. The observation of the chancellor was of a present fact. The claim had never been filed. The words of the chancellor are but a reiteration of the statute, and are in entire harmony with the views above expressed.

I am constrained to the conclusion, that the rights of these petitioners were not cut off or defeated by the act of the owner, Dey, in presenting his petition in bankruptcy, or by the adjudication thereon, and that the order under review should be modified so as to require payment to them of the debts secured by their liens, in priority to the mortgagees, and to the rights of the assignee. The costs of this review should be paid out of the estate.