In re ROEBER.

(District Court, E. D. New York.    May 27, 1902.)

1. BANKRUPTCY—MECHANICS' LIENS—EFFECT OF BANKRUPTCY OF PRINCIPAL
     CONTRACTOR.
         An adjudication of voluntary bankruptcy against a building contractor
     who has an unpaid claim for the construction of a building, and the
     appointment of a trustee for his estate before the filing of notices of lien
     by subcontractors, does not defeat the right of the latter to a lien given
     them by the mechanic's lien law of the state, where they file their notices
     within the time allowed by the statute, even in a state where it is held
     that a transfer of his claim by a contractor before notice filed defeats
     the subcontractors' right to a lien, since the trustee takes title only for
     the purpose of distributing the property under the bankruptcy law, and
     the passing of the title to him does not enlarge the rights of general
     creditors as against special creditors to whom the state statute has given
     a lien; nor can the bankruptcy proceedings be used by the contractor
     to defeat the equitable provisions and purpose of such statute.

In Bankruptcy.

Kenneson, Crain, Emley & Rubino, for trustee.
Sackett & Lang, for Otto E. Reimer Co.
J. Stewart Ross, for L. Bossert & Son.

THOMAS, District Judge.    The following events occurred in 1901 :
On September 13th Roeber was adjudged a voluntary bankrupt.    The
trustee was selected on October 3d, and qualified on October 24th.
Prior to September 13th, Roeber, pursuant to contract, erected a
building on the land of one Leiser, and on that date the considera-
tion was unpaid, but has been paid into this court for disposition.    On
September 17th Louis Bossert & Co. and the Otto E. Reimer Co.
filed notices of lien against the land.    The question involved is whether
notices of lien against the land of Leiser filed by the subcontractors
subsequently to the adjudication of the principal contractor as a bank-
rupt are effective against the title of the trustee.    The trustee's argu-
ment is this :    The lien of a subcontractor can be made effective
against the land only during such time· as the owner of the land re-
mains a debtor of the principal contractor.    Hence, if the owner pay
the contractor, or the latter assign the debt to another, or the title
to the debt vest in another by operation of law, as by the appoint-
ment of a receiver, or by a general assignment for the benefit of cred-
itors, or finally by adjudication of the contractor as a bankrupt, fol-
lowed by the appointment of a trustee, a notice of lien filed after
either event is ineffective as against the person taking the title.    The
authorities cited to sustain or illustrate this claim seem to hold the
following· propositions :
    First.    If the owner of property pay the debt before notice of the
lien is filed, no valid lien is obtained.    Carman v. McIncrow, 13 N.
Y. 70 ;  Keavey v. De Rago, 20 Misc. Rep. 105, 45 N. Y. Supp. 77.
(1) A sub-subcontractor is limited to the amount due from the con-
tractor to the subcontractor.    Lumbard v. Syracuse, Binghamton &
N. Y. R. R. Co., 55 N. Y. 491 ;  French v. Bauer, 134 N. Y. 548, 32 N.
E. 77, 20 L. R. A. 560.

Second. If the contractor transfer the claim against the owner, even in payment of a precedent debt, before notice of lien is filed, the lien is ineffectual. Gibson v. Lenane, 94 N. Y. 183; McCorkle v. Herrman, 117 N. Y. 297, 22 N. E. 948; Stevens v. Ogden, 130 N. Y. 182, 29 N. E. 229.

Third. If the contractor transfer the claim against the owner, any subsequent attempt of a general creditor to reach the debt by legal proceeding is unavailable. Greentree v. Rosenstock, 61 N. Y. 583; Williams v. Ingersoll, 89 N. Y. 508.

Fourth. A receiver in supplementary proceedings based upon a judgment against the contractor, and instituted before the notice of lien is filed, takes as against the lien. McCorkle v. Herrman, 117 N. Y. 297, 22 N. E. 948. But see Deady v. Finck (City Ct. N. Y.) 5 N. Y. Supp. 3; Matter of The Christie Mfg. Co., 15 Misc. Rep. 588, 36 N. Y. Supp. 923; Reading Hardware Co. v. City of New York, 27 Misc. Rep. 448, 59 N. Y. Supp. 253.

Fifth. If a contractor make a general assignment for the benefit of creditors, the assignee's title is preferred: (1) To that acquired under an attachment subsequently levied. Smith v. Longmire, 24 Hun, 257. (2) To a notice of lien subsequently given. Craig v. Smith, 37 N. J. Law, 549, cited in McCorkle v. Herrman, 117 N. Y. 305, 22 N. E. 948; Armstrong v. Borden's Condensed Milk Co., 65 App. Div. 503, 72 N. Y. Supp. 1014, on appeal 66 N. E. 1104; Kane v. Kinney, 68 App. Div. 163, 74 N. Y. Supp. 260, on appeal 66 N. E. 619; Ryerson & Son v. Smith, 152 Ill. 641, 38 N. E. 1032. See, contra, Oates v. Haley, 1 Daly, 338; Smith v. Baily, 8 Daly, 128; Mandeville v. Reed (Ct. App. 1850) 13 Abb. Prac. 173; Henderson & Reed v. Sturgis, 1 Daly, 336; McMurray v. Hutcheson, 10 Daly, 64. It is urged that the last three cases are not adverse to the trustee's contention, because in each of them it appears that there was nothing due at the time of the assignment, and the assignee finished the contract. It is not understood how such change of fact makes the decisions irrelevant.

Sixth. No lien exists, inchoate or otherwise, until notice of lien is filed. Payne v. Wilson, 74 N. Y. 348; McCorkle v. Herrman, 117 N. Y. 297, 303, 22 N. E. 948; Quimby v. Sloan, 2 E. D. Smith, 594, 609, 610.

It is claimed, by virtue of the foregoing propositions, that any transfer, not collusive or colorable, of title to another, either by the voluntary act of the contractor, or by operation of law, or a full payment by the owner to the contractor, renders nugatory any notice of lien subsequently filed by a subcontractor. From this it is argued that the title of a trustee in bankruptcy is preferred to a lien of which notice is subsequently filed. This is adverse to the holding in Re Dey, 9 Blatchf. 285, Fed. Cas. No. 3,871, and in Re Adam Huston, 7 Am. Bankr. Rep. 92. It is also contrary to good conscience, the spirit of the mechanic's lien law, and the policy that inspired its enactment.

The statute makes a solemn promise of a lien in behalf of such special creditors as, under conditions named, should devote their property to the improvement of real estate. Thus:

"A contractor, sub-contractor, laborer or material man, who performs labor or furnishes materials for the improvement of real property with the consent or at the request of the owner thereof, or of his agent, contractor, or sub-contractor, shall have a lien for the principal and interest of the value, or the agreed price, of such labor or materials upon the real property improved or to be improved and upon such improvement, from the time of filing a notice of such lien as prescribed in this article."

And the statute states the time within which notice of such lien may be filed. The statute, within limits sufficiently definite, appoints the fund to certain creditors, and distinguishes them as a class from all other creditors. The present contention is that the contractor may appoint the fund to general creditors, and that he effects this when he vests the title to the debt in a trustee in bankruptcy. If this be true, what is the result? A lien law which is enacted, in part, that subcontractors may have the security of the res to the extent of the contractor's claim, added to the personal liability of the contractor, is subject to the power of the contractor to destroy the security by appointing, through legal machinery, a person to distribute the property among his general creditors. That is, the contractor may annul the promised benefit of the statute in favor of those who come under it, not only by collecting or selling his debt, but also by appointing a trustee to take it for general distribution. Of what value, then, is the statute to subcontractors? Only this: If the contractor suffer the notice of lien to be filed, he cannot defeat it, but before such filing he may defeat it at will. This leaves the power with the contractor, and its exercise to his volition. And while the statute intends that those creditors who have put some valuable thing into the property shall be paid first out of the debt owing by the property, the contractor, by the trustee's contention, may ordain that his general creditors shall be paid ratably. The statute commands the owner to the limit of her indebtedness to apply the property to the payment of such creditors of the contractor as shall claim liens within a certain time in the manner pointed out; the contractor commands by voluntary proceedings in bankruptcy, that the fund intended by the statute for specific creditors, whose property such fund contains, shall be paid only to the whole body of his creditors, irrespective of any relation which they may have to the fund. This places the whole matter at the bankrupt's disposition. If the decisions had left anything valuable for lienors, which seems doubtful, this claim would destroy all similitude to a protective statute. For of what avail is a statute intended to appoint a fund to creditors whose property has been converted into it, if the debtor may, with the court's aid, distribute the fund to general creditors? The statute hands the fund to specialized creditors. The contractor would hand it to all his creditors. There would be no validity nor purpose nor worthy aim in the statute, so interpreted. One ostensible purpose was to protect subcontractors against the contractor, but the construction claimed would place the subcontractors at the mercy of the contractor, and enable the latter to bestow upon his general creditors what the statute promised should be used to secure certain creditors specifically pointed out.

The court is unwilling to adopt the construction claimed by the

trustee, because it would result in a simple nullification of the statute. So far as it relates to subcontractors, it would defeat its purpose, reverse its promise, and enable the person against whom it was aimed to do the very thing that it intended should not be done, viz., distribute the specific fund to general creditors, rather than to more meritorious, and hence a preferred class of, creditors. Why call it a lien law, in part, for subcontractors, if there can be no such lienors under it except by the first contractor's permission? Why does it exist, if it cannot be beneficially invoked when needed? If the contractor be solvent, it is unnecessary for a subcontractor. If the contractor is insolvent, it is useless, if it may be avoided by the contractor taking insolvency proceedings. The fact is clear enough that the statute promised the parties in question that, if they supplied material for the improvement of the land, they should have a lien thereon, if they filed a notice within due time. The present petitioners did both. Now, the claim is that the lien was promised on the condition that it should not be good if the first contractor intervened, and pending the filing of the lien vested the fund in the bankruptcy court for distribution to his general creditors. It is desired to illustrate that the trustee's contention is per se erroneous by emphasizing and repeating the statement that such claim runs counter to the policy which prompted and animated the enactment of the statute, to any reason or propriety for its existence, to its capacity for usefulness, or the possibility of its affording any reasonable security to persons who trust to it. The contention of the trustee subverts the statute, and puts into the contractor's hand what the Legislature intended to take out of it, and disables persons whom the Legislature intended to enable, by giving them capacity to acquire liens. The court is not constrained by any analogy between an executed transfer of the claim to a creditor and an employment of the bankruptcy act by the contractor.

The present bankrupt by his voluntary act has invoked proceedings that have called the trustee into existence for the purpose of distributing property to creditors according to their several rights. The trustee represents the bankrupt and the creditors, and he holds the property for the mere purpose of sale and just distribution to them. The legal title has, indeed, passed from the bankrupt to the trustee, but merely to enable him to exercise a power whereby the bankrupt's obligations to his creditors shall be discharged. The ability or right of any creditor is not enlarged. No creditor is entitled to a different priority of payment or to enlarged payment. As the bankrupt was entitled to use his property to pay his debts, the trustee may use it. If an executed transfer by the contractor would have cut off liens, such a transfer by the trustee would have a like effect. This statement is modified by certain provisions of the act cutting off liens of certain creditors. But it should be kept in mind that the trustee is a simple intermediary, empowered to dispense the bankrupt's property, and to facilitate the execution of his powers the title is vested in him. His title is no more than adequate to the fulfillment of the trust reposed in him. If now the trustee takes the power to do what the bankrupt might have done, and no more (par-

ticular enlargement of power by the statute being disregarded as here immaterial), and creditors have no greater rights than they formerly had against the bankrupt, the trustee has no power, after notice of lien, to take property which the state statute has conferred on special creditors, and transfer it for the benefit of other creditors, who before the bankruptcy proceedings had no right to it as against such special creditors. It is true that, when the petition in bankruptcy was filed, notice of lien had not been filed; but the materialmen had put their property into the land, on a promise that the lien should be good when filed, and when so filed it would have been good against the person afterwards bankrupt, and against his creditors. The lien would have been good against A., the contractor, and B., a general creditor; but the contention is that if C. become a trustee in bankruptcy for the purpose after sale of vesting the proceeds of A.'s property in B., so far as needed to pay A.'s debt to B., C. may deliver to B. the lienor's property rights, after notice of lien duly filed. How does C. obtain this increased advantage—this augmented title, which A. or B., or either of them, did not possess? Does the grantee of the power possess more plenary ability than his grantor and the creditors combined? It may be, within the decisions cited above, that if A. transfer his claim to B., creditor, with or without an intermediary, subsequently filed notices of lien would be cut off. But transfer to an intermediary is not equivalent to a transfer to a creditor. It is but a step in an unfinished transfer. A. asks the court to appoint an officer who shall take A.'s property, such as it is, and distribute it to A.'s creditors. Does A. ask that the court will, in addition, take a fund into which special creditors have placed their own property, upon the assurance of a lien therefor, and distribute it to A.'s creditors, when the lienors are not in default? And if A. ask a thing so unconscionable, in what particular section does the bankruptcy act justify the proposed spoliation? If A. may transfer his claim to B. to deprive materialmen of their liens, he certainly should not be allowed to ask this court to furnish the machinery for effecting that result. Because A. is potential to defraud if he will, this court is not constrained to furnish him the cover of legal protection.

Therefore it is concluded that the lienors in part created the fund in dispute, the statute promised them payment out of it, they have, in law and equity, a lien on it for such payment, and the contractor should not be allowed to deprive them of it by transferring the fund to his general creditors through the machinery of this court. The court is constituted to restrain, and not to facilitate, the avoidance of lawful and honorable obligations.