In re FRANKLIN.

(District Court, E. D. North Carolina. February 11, 1907.)

1. BANKRUPTCY—STATUTORY LIENS.
   Before a creditor can claim a lien given by a state statute on property of a bankrupt, he must perfect the same, as required by such statute.
   [Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Bankruptcy, § 287.]

2. SALES—CONDITIONAL SALE—NORTH CAROLINA STATUTE.
   The provision of Revisal N. C. 1905, § 983, requiring conditional sales to be reduced to writing and registered in the county where the purchaser resides, refers to the county in which he resides at the time the contract is made, and as construed by the Supreme Court of the state the contract is valid if there recorded, although the property is thereafter removed into another county to which the purchaser changes his residence. A bankrupt at the time of purchasing property under such a contract had acquired no fixed place of residence in the state but was then residing and receiving his mail in the county where the contract was made and to which the property was shipped. Held, that the recording of the contract in that county was sufficient to preserve the seller's lien.
   [Ed. Note.—For cases in point, see Cent. Dig. vol. 43, Sales, § 1353.]

3. BANKRUPTCY—TRANSFERS BY BANKRUPT—MORTGAGE—EFFECT OF RECEIVING PREFERENCE IN SEPARATE TRANSACTION.
   A mortgage given for money borrowed at the time to pay the purchase price of the property mortgaged, whether or not the same identical money was used to make the payment, is in effect a purchase money mortgage, and as such entitled to high rank, and the mortgagee's right to payment from the proceeds of the property when sold by the mortgagor's trustee in bankruptcy is not affected by the fact that he received an illegal preference from the bankrupt in an entirely separate transaction, the remedy of the trustee in such case being by a suit to recover the preference.
   [Ed. Note.—For cases in point, see Cent. Dig. vol. 6, Bankruptcy, § 259.]

4. SAME—ENFORCEMENT OF MORTGAGE IN BANKRUPTCY PROCEEDINGS—COSTS.
   A mortgagee of a bankrupt who submits his claim to the bankruptcy court for allowance and payment from the proceeds of the mortgaged property is chargeable with his pro rata share of the costs of the bankruptcy proceedings.

In Bankruptcy. On report of referee.

R. N. Simms, for trustee.
Jno. W. Hinsdale, for Bank of South Boston.
A. Jones & Son, for American Wood Working Machinery Co.
Pou & Fuller, for Virgina-Carolina Lumber Co.
Davis & Godwin, for Gordon Hollow Blast Grate Company.

PURNELL, District Judge. On the 10th day of March, 1905, J. R. Franklin was duly adjudged a bankrupt, and the cause referred to V. H. Boyden, Esq., referee, at Raleigh, N. C. After considerable delay and many hearings the case is now certified by the referee on claims and contentions therein on exceptions to the report of the referee.

The first claim thus contested the referee reports as follows:

The claim of the Gordon Hollow Blast Grate Company, lien upon the machinery and plant, upon which the referee holds the claim is invalid: (1) For the reason that the lien was never perfected before or after the bankruptcy by the claimant, as required by the North Carolina statute. (2) That the furnishing of the articles was not by contract or agreement, but a sale in the regular course of business, and only personal credit was looked to for payment. (3) That the Bank of South Boston, mortgage creditor, has a superior lien to the Raleigh Iron Works. In this report exceptions are filed. The material for which this lien is claimed was ordered through an agent of claimant company on one of their blanks, and it was not even designated where the material was to be used. The referee decides upon the foregoing facts that the Gordon Hollow Blast Grate Company is not entitled to a lien upon the machinery, plant, or land belonging to the bankrupt's estate, as a material furnisher, as claimed and set up in the proof of claim and the petitions herein filed. It is further decided that the Gordon Hollow Blast Grate Company is not entitled to the lien claimed, for the further reason that the said lien has never been perfected under the laws of the state of North Carolina, as required under that act or provisions of said laws which create said liens, and which, perfecting the bankruptcy act, requires before it can become such a claim in bankruptcy as is entitled to be paid in full. The bankruptcy act protects all statutory liens which have been properly perfected before or after the adjudication in bankruptcy in accordance with the statute or provision of law which gives them birth. If they have not been so perfected as required, then they cannot be said to exist in these proceedings or to be entitled to priority in payment. The claim is disallowed as a material furnisher's lien, and can only be filed and allowed as an unsecured claim against the bankrupt's estate. See In re Lillington Lumber Co. (D. C.) 13 Am. Bankr. Rep. 153, 132 Fed. 886, "Statutory lien filed after adjudication of debtor." "A statutory lien filed within the time prescribed by the statute is protected if otherwise valid, although not filed until after the debtor's adjudication as a bankrupt." See other cases cited. Fehling v. Goings, 13 Am. Bankr. Rep. 154, 67 N. J. Eq. 375, 58 Atl. 642; Crane v. Smythe (Sup.) 11 Am. Bankr. Rep. 747, 86 N. Y. Supp. 711, 87 N. Y. Supp. 917; Matter of Roeber (D. C.) 9 Am. Bankr. Rep. 778, 121 Fed. 444; In re Mero (D. C.) 12 Am. Bankr. Rep. 171, 128 Fed. 630. The lien claimed by the Gordon Hollow Blast Grate Company has never been filed within the time required by the state law, or filed at all, except as set up in these proceedings, in the bankruptcy court. It therefore has never been perfected. Appeal and request for certification, costs of the proceedings taxed against the Gordon Hollow Blast Grate Company.

The opinion and decision of the referee are affirmed. Before a creditor can claim a lien given by a state statute he must comply with the statute and perfect his lien. It is only after so perfected that they are protected by the court of bankruptcy, or by any other court.

And the second claim is like unto the first, which is the claim of the Raleigh Iron Works. It appears in Exhibit A filed with this claim that in the account filed and claimed to be a lien such items as follows are charged: Collection charges on checks, drayage, freight paid, telephone messages, railroad fare, steel, pipes, dies, and articles of general merchandise. While some items charged would support a lien under the North Carolina statute the foregoing items would probably be successfully contested. But no lien was filed or perfected as required by

the state statute. However this may be, the claim was not perfected under the state statute and cannot be allowed in bankruptcy as a preferred claim, but can be proved as an unsecured claim. The decision of the referee to this effect is affirmed and exceptions thereto overruled. Claimant at best had an inchoate right of lien, which a court of bankrutpcy cannot protect or enforce. The American Wood Working Machinery Company claim their lien upon the property described in the conditional sale under the following statute:

"All conditional sales of personal property in which the title is retained by the bargainor shall be reduced to writing and registered in the same manner and for the same fees and with the same legal effect as is provided for chattel mortgages in the county where the purchaser resides; or in case the purchaser shall reside out of the state, then the county where the said personal estate, or some part thereof, is situated; or in case of choses in action where the donee, bargainee or mortgagee resides." Code, § 1275; Revisal 1905, § 983.

The statute evidently refers to the place that the purchaser resides at the time of the execution of the mortgage or conditional sale. Franklin really had no fixed residence.

The testimony is as follows: The conditional sale dated Raleigh, N. C., November 6, 1902, was executed in Raleigh, and the mail address of Franklin was Fuquay Springs, Wake county, N. C. The conditional sale provided that the property should be delivered to Franklin at Raleigh via Southern Railway, and it was delivered to him at Raleigh and reshipped to Fuquay Springs, Wake county. All of the correspondence between Franklin and the American Wood Working Machinery Company until May 27, 1903, was written from and postmarked Fuquay Springs, Wake county, N. C. Franklin came to North Carolina from Virginia on October 17, 1902, and went to Fuquay Springs and continued to take his meals at Fuquay Springs until May, 1903. He slept at Fuquay Springs three nights in every week until December, and spent about one-third of his time during this interval at Fuquay Springs. He remained at Fuquay Springs two or three weeks until his wagons came down, and during this interval purchased the machinery of the claimants. He did not commence the operation of his mills at Chalybeate Springs until February 1st. The machinery was purchased in the city of Raleigh, was ordered shipped to Raleigh, and the conditional sale was executed in Raleigh and recorded in Wake county, where the bankrupt resided at the time of the execution of the conditional sale.

The American Wood Working Machinery Company insists that its conditional sale was properly recorded in the county where Franklin resided at the time of the execution thereof. Franklin testifies that he afterwards moved to Chalybeate Springs in Harnett county, and that he accepted the property at Fuquay Springs, in Wake county, and afterwards carried it into Harnett county, where he constructed his plant and acquired residence. The Supreme Court of this state has decided that no new registration was rendered necessary by reason of such removal. Harris v. Allen, 104 N. C. 86, 10 S. E. 127; Barrington v. Skinner, 117 N. C. 52, 23 S. E. 90. And registration is notice to the world even when the property is carried into another state. Hornthal v. Burwell, 109 N. C. 10, 13 S. E. 721, 13 L. R. A. 740, 26 Am. St. Rep. 556; Woody v. Jones, 113 N. C. 255, 18 S. E. 205.

The American Wood Working Machinery Company further contends that, if Franklin during the interval between October 17th and November 6th resided in both counties, then they are entitled to their lien, for the reason that a person may have residence in two or more counties in a state, and registration of a deed of trust or mortgage executed by him would be sufficient in any one of the counties where he resided. Weaver v. Chunn, 99 N. C. 435, 6 S. E. 370; 10 Am. & Eng. Enc. Law, p. 9, and cases cited; 24 Am. & Eng. Enc. Law, 699. The declarations of Franklin as to his intent to live at Chalybeate Springs are not controlling as to residence as to registration. He had acquired no residence in that county, and the effect of an animus revertendi, as in some cases, does not apply. And all of the testimony shows that he resided during this short interval in Wake county, especially when the claimant was led to believe by reason of the execution of the conditional sale in Wake county and the delivery of the property to him in Wake county, and his letters dated from Wake county, and in accordance with Franklin's admissions that he resided at Fuquay Springs for two or three weeks until his teams came; and, further than this, he had no houses at Chalybeate Springs, and that he took his meals at Fuquay Springs until May, 1903, and until December 1st he slept three nights in the week at Fuquay Springs in Wake county. At that time at best Franklin was a kind of bird of passage. He had come from another state, where his family still resided, and had not settled in any particular part of this state. Temporarily he was stopping in Wake county, the property was purchased in Wake county, and was so shipped. His post office was in the county. Besides, the debt was for the purchase money, and to hold the seller is not entitled to a lien under the circumstances seems to be an encouragement for fraud, and is inequitable. Claimant seems to have acted in good faith and done all in his power to comply with the state statute. If he was misled and being misled, he should not be held to have forfeited his lien under the contract. Equity would at best so hold, and courts of bankruptcy are in a large measure governed by equitable principles.

Claim of the Virginia-Carolina Lumber Company: The allowance of this claim was objected to by the trustee and after hearing the matter fully the referee finds the following facts, which are certified in due form, to wit:

(1) J. R. Franklin was duly adjudicated a bankrupt on March 10, 1905, upon the petition filed March 6, 1905.

(2) On the 4th day of January, 1905, prior to the filing of the petition in bankruptcy, the bankrupt obtained from the Virginia-Carolina Lumber Company a promise to advance the sum of $750 with which to buy a certain tract of timber, known as the "Pearson Timber Tract," and in the transaction promised to give the Virginia-Carolina Lumber Company a mortgage upon said timber to secure the said loan. On January 4, 1905, the Virginia-Carolina Lumber Company advanced the money to the bankrupt, and on the same day he executed to the said company two notes of $375 each, secured by deed of trust of even date, conveying to the said Virginia-Carolina Lumber Company the identical timber rights for which the purchase money had been advanced. Although the bankrupt had signed the deed of trust on January 4, 1905, he did not acknowledge the same until January 14th, 10 days after the signing of the same, and the said deed of trust was not registered in Harnett county until January 16, 1905, 12 days after the same was signed.

(3) It appears from the evidence, and is found as a fact, that the bankrupt

used $400 of the money so advanced by the Virginia-Carolina Lumber Company, in paying for said timber rights, and that the balance ($350) the bankrupt put to his own personal use in his business, but that 10 or 15 days after the receipt of the money from the Virginia-Carolina Lumber Company the bankrupt paid the balance due on the said timber rights to the vendors, J. D. and W. M. Pearson.

(4) The timber rights described in the deed of trust to the Virginia-Carolina Lumber Company and as set out in its proof of claim is the identical tract of timber which the said lumber company advanced the money to the bankrupt to buy, and said timber rights under the adjudication in bankruptcy passed into the possession of the trustee of bankrupt, and was sold by 'him and the proceeds arising from said sale are now in the possession of the said trustee subject to the orders of court under the proof of claim filed thereto.

(5) During the month of February following the execution of the deed of trust in January the bankrupt entered into a contract with the Virginia-Carolina Lumber Company to sell to the said lumber company the entire output of his sawmill, which contract is filed as an exhibit in this proceeding, and upon this contract the bankrupt obtained during the month of February from the Virginia-Carolina Lumber Company advances in money amounting to $950. The amount so advanced was advanced on open account under the contract for the output of the mill, and the Virginia-Carolina Lumber Company held no security therefor. Within a week before the bankrupt filed his petition in bankruptcy the president and another officer of the Virginia-Carolina Lumber Company came to the city of Raleigh, as appears from the evidence, and discussed the status of the bankrupt's business with him fully. At that time the bankrupt was insolvent and was aware of this fact, and so informed the said officers of the Virginia-Carolina Lumber Company. He further swears, as appears in the evidence, that he told the said officers of the company that his creditors were pressing him, and that he must have money or he would have to suspend operation of his sawmill plant. Thereupon the said officers of the said Virginia-Carolina Lumber Company refused to advance to said bankrupt any more money, and demanded that he surrender to them the lumber he had on hand, and the bankrupt swears that upon his hesitating to do so said officers of the lumber company threatened him, and by such threats obtained from him his consent to the removal of a large quantity of lumber then in possession of the said bankrupt at Chalybeate Springs, N. C. After obtaining the consent from the bankrupt the said Virginia-Carolina Lumber Company thereupon seized and took possession of and carried away and converted to its own use a large amount of lumber, of the value of about $1,000, belonging to the said bankrupt, and that in so doing the said Virginia-Carolina Lumber Company obtained a greater percentage of its claim against said J. R. Franklin than the other creditors of the same class; that at the time this preference was obtained upon the unsecured claim against the bankrupt the said Virginia-Carolina Lumber Company not only had reasonable cause to know, but did know, as appears from the evidence, that Franklin was insolvent; and that the said transfer and seizures of said lumber were made in contemplation of the bankruptcy of the said Franklin, and the transfer of the said lumber to the Virginia-Carolina Lumber Company was done, and in fact it appears from the evidence it was done, in fraud of the other creditors of said bankrupt, other than the said Virginia-Carolina Lumber Company, and that said transfer of the property by the bankrupt to the said Virginia-Carolina Lumber Company was under duress of the threats made to the bankrupt by the said Virginia-Carolina Lumber Company; that said property was seized and obtained by the Virginia-Carolina Lumber Company within four months of the filing of the petition in bankruptcy, in fact within one week prior to the filing by the bankrupt of his petition in bankruptcy: that after said property had been so seized and carried away by the said Virginia-Carolina Lumber Company and converted to its own use said Franklin repeatedly demanded statements from them as to the amount of the said lumber carried away, but said Virginia-Carolina Lumber Company refused to furnish same; that similar demands were made upon them by the trustee in bankruptcy after his appointment, and these demands were also refused. Said Virginia-Carolina Lumber Company has filed no proof of claim upon this transaction with the bank-

rupt, and has not surrendered or made any account or payment to the trustee in bankruptcy on account of the said lumber transferred to and seized by it from the bankrupt, to the value of about $1,000.

(6) The said Virginia-Carolina Lumber Company has voluntarily come into this court and proven its claim for the $750 and interest, the same being money advanced for the purchase of the Pearson Timber Tract, claiming its right to receive the proceeds of the sale of this tract by the trustee in bankruptcy.

### Opinion of Referee.

From the foregoing facts the referee is of the opinion that the secured claim of the Virginia-Carolina Lumber Company should be allowed, and the same is allowed, and it is adjudged that the said creditor is entitled to be paid the sum of $750 and interest on said claim from January 4, 1905, until paid out of the proceeds of the sale, now in the hands of the trustee, arising from the sale of the securities mentioned in the deed of trust, provided the amount realized from the sale of said securities is sufficient to meet the principal and interest. It is further ordered and adjudged that, as the creditor voluntarily came into court and filed its claim for allowance, the said claim must bear its pro rata part of the cost of administration under the proceedings in bankruptcy. The referee is of the further opinion that the transaction under the deed of trust and under the contract for the purchase of the output of the bankrupt's sawmill plant are two separate and distinct transactions; the one under the deed of trust being a security given for a present consideration, and the other being wherein money was advanced on open account to the bankrupt under a contract to purchase the output of the mill, no security being given.

In considering the rights of the creditor, to wit, the Virginia-Carolina Lumber Company, the referee is of the opinion that the validity of its secured claim cannot be attacked for invalidity on account of the fraudulent preference, which was knowingly obtained by the said creditor in trying to make itself secure against loss on its unsecured claim, which was for money advanced under the contract for the purchase of the output of the sawmill. The two transactions are separate and distinct. If the creditor should attempt to prove its claim for the money advanced under the contract, it could not be allowed until it should surrender to the trustee the preferential payment, to wit, the value of the lumber, which it knowingly and fraudulently obtained as a payment from the bankrupt on the very eve of the filing of the petition in bankruptcy. The referee is of the opinion that the proper course to be pursued by the trustee in obtaining from the Virginia-Carolina Lumber Company the preferential payment made to it by the bankrupt as herein stated would be by suit entered against the said lumber company in the District Court of Virginia.

The report of the referee, the clearness with which he finds the facts and states his conclusions of law, is highly commendable. While he does not pretend to cite all the decisions upon which his conclusions are based, he does cite ample to show such conclusions are sound, and his decision on this claim is in all respects affirmed. The second debt was contracted for the purchase of the property set aside and appropriated under the mortgage for the payment thereof. This class of debts is of a high order, and under the state Constitution (article 10, § 2), exempting from sale under execution the homestead of a debtor, it is provided, "but no property shall be exempted from sale for taxes or for payment of obligations contracted for the purchase of said premises," thus providing for what may be termed a "constitutional mortgage" or lien for purchase money. The debt allowed was purchase money and the especial property appropriated for the payment of the debt seems to be a proper contract, in compliance with the constitutional provision referred to. The trustee could acquire no better title

than the bankrupt had. He succeeds to the bankrupt's title, no more, no less, and he takes subject to liens good against the bankrupt at the time. This is well settled and the receipt of a preference on a separate and distinct transaction could not divest a creditor of his vested rights to the property or the proceeds thereof.

Exceptions to the allowance of this claim are overruled, and the report of the referee, both as to findings of fact and conclusions of law, affirmed.