L. H. HORNTHAL et al. v. D. S. BURWELL et al.

*Attachment—Mortgage—Domicile—County—Records and Judgments in other States—Contract.*

M., being indebted to plaintiffs, conveyed to them certain personal property, then in North Carolina, by deed of mortgage, which was duly proven and registered in the proper county; M. retained possession of the property and carried it, in the prosecution of his business, into the State of Virginia, where—he being a non-resident of that State—it was seized under attachment at the suit of his creditors, and under judgments rendered in the Courts of defendants, Virginia, was sold and the proceeds applied to their satisfaction. The mortgage was not registered in Virginia, and it appeared that, by the laws of that State, mortgages of personal property are void against creditors except from the date of their registration: *Held,*

1. That the plaintiffs were entitled to recover from the defendants the value of the property included in the mortgage, which they had caused to be seized and sold under their attachments.

2. Attachment is not, strictly speaking, a proceeding *in rem*, and a judgment therein is only conclusive upon the parties to it, and those in privity with them.

The cause was heard upon complaint and demurrer, at Spring Term, 1891, of WASHINGTON Superior Court, *Bryan, J.,* presiding.

The plaintiffs alleged—

"1. That at the time of the execution of the deed of trust hereinafter named, one I. T. H. Moore was the owner, and had in his possession in Washington County, N. C., a large number of horses, mules, oxen, log-wagons, and other property.

2. That on the ____ day of _____, 1888, the said Moore, being indebted to the plaintiffs in the sum of three thousand dollars, for the purpose of securing the same conveyed to the plaintiffs the said property by deed of mortgage with power of sale, which was duly registered in the county of Washington, where the property then was, and in the county of Hertford, the residence of said Moore, before the seizure of the property hereinafter complained of.

3. That Moore was engaged in getting lumber for market, and used the said property in his business, and moved the same from place to place where he could procure standing timber.

4. That during the month of August, 1889, the said Moore became engaged in the timber business in the county of Southampton in Virginia, about two or three miles from the State line, and was using the said property in said county in his business, and while said property was in said county being so used, the defendants, who were creditors of said Moore, sued out attachments in the proper Courts of said county in suits therein pending in their favor against said Moore, and caused said property to be seized under said attachments and sold by the Sheriff of said county under orders duly issued in said suits, and the money applied in

part payment of the judgments in said causes, the said Moore being at the time a non-resident of Virginia.

4½. That under the laws of Virginia, all mortgages of personal property are void as to creditors, except from the recording of such mortgages in the county wherein the property is, and the mortgage under which the plaintiffs claim was not recorded in the county of Southampton.

5. That the property so seized was part of that conveyed in the mortgage deed aforesaid, and consisted of three horses seven mules, six oxen, four log-wagons and chains, two pairs of log-wheels and chains, two pairs of bunk wheels, and five sets of wagon harness, which sold at said sale for six hundred and fifty-seven dollars and fifty cents, and were reasonably worth twelve hundred dollars.

6. That no part of the debt secured in the said deed of trust has been paid; the said Moore is insolvent, and the property described in the mortgage aforesaid not seized, as alleged, is of little value and entirely insufficient to pay the debt secured.

7. That the plaintiffs have been greatly damaged by the defendants.

Wherefore, they demand judgment for the sum of fifteen hundred dollars, with interest and cost."

The defendants demurred, and assigned the following grounds therefor:

"Because the complaint does not state any cause of action against these defendants, it appearing from the complaint that the mortgage under which plaintiffs claim was not recorded in the county of Southampton, in the State of Virginia, where the property in controversy was situated, as was required by the laws of that State, to make it valid against the creditors of said Moore. And that said property was attached and sold under regular attachment proceedings sued out in a suit pending in the proper Court of said county of Southampton, wherein these defendants, who were

creditors of said Moore, were plaintiffs and said mortgagor was defendant, and the proceeds were insufficient to pay the judgments in said suit"

It was adjudged by the Court that the demurrer be over-ruled, and they having declined to answer over, as allowed by the Court, it was further adjudged that the plaintiffs recover the sum of six hundred and fifty-seven dollars and fifty cents. with interest and costs.

From this judgment defendant appealed.

*Mr. C. L. Pettigrew*, for plaintiffs.
*Mr. B. B. Winborne*, for defendants.

SHEPHERD, J.: The principle embodied in the maxim *mobilia sequuntur personam* is generally recognized in all civilized countries, and it follows as a natural consequence, says STORY (Conflict Laws, 383), that "the laws of the owner's domicile (or the *lex loci contractus*) should in all cases determine the validity of every transfer, alienation or disposition made by the owner, whether it be *inter vivos* or be *post mortem.*" The authority of such laws, however, is admitted in other States, not *ex proprio vigore*, but *ex comitate*, and, hence, it is now very generally held that when they "clash with and interfere with the rights of the citizens of the countries where the parties to the contract seek to enforce it, as one or the other of them must give way, those prevailing where the relief is sought must have the preference." *Oliver* v. *Townes*, 14 Martin R. (La.), 93; 2 Kent Com., 458; *Moye* v. *May*, 8 Ired. Eq., 131. This is illustrated by the leading case first cited, where a ship was sold in Virginia and was, before delivery, attached by creditors at New Orleans The Court held the sale void, as to the attaching creditors, because the law of the *situs* required an actual delivery to pass the title.

So, in the case of *Green* v. *Van Buskirk*, 7 Wallace, 139, an attachment in Illinois was sustained as against a mortgage

executed by the owner in New York, but not registered in Illinois where the property was situated. The laws of that State provided that the mortgage should be "void as against third persons unless acknowledged and registered, and unless the property be delivered to and remain with the mortgagee." This principle, however, has no application to a case like ours, where the mortgage was executed and duly registered according to *both the law of the domicile and the law of the situs.* The property was situated in this State, and the title of the mortgagees perfected here. This being so, we think it quite clear that the removal of the property to another State could not deprive the mortgagees of their rights.

In support of this position there seems to be a consensus of judicial opinion. Even in Louisiana (whose Courts were, perhaps, among the most prominent in giving effect to the law of the *situs* as above explained) there has never been any doubt upon this question. On the contrary, in *Thuret* v. *Jenkins*, 1 Martin (La.), 318, it was held that where the title had passed, "the circumstance of the chattel being afterwards brought into a country, according to the law of which the sale would be invalid, would not affect it." The doctrine of this case has since been affirmed in *Southern Bank* v. *Wood*, 14 La. Am., 561.

To the same effect is *Langworthy* v. *Little*, 12 Cush., 109, where SHAW, C. J., says that "a party who obtains a good title to property, absolute or qualified, by the laws of a sister State is entitled to maintain and enforce those rights in this State." The property was attached in Massachusetts as the property of the mortgagor, and the Sheriff was held liable for its conversion.

So, in Jones on Chattel Mort., 301, it is said that "although the mortgage be not executed in conformity with the laws of the State to which the property is afterwards removed, if executed and recorded according to the laws of the State or

country of its execution, it is effectual to hold the property in the State to which it is removed."

So, in *Ballard* v. *Winter*, the Supreme Court of Connecticut sustained an action of trover against one of its own citizens for suing out attachment proceedings against property which had been mortgaged according to the law of Massachusetts, but which had been subsequently removed to the former State. The Court said: "By the general rules of law, title thus perfected in one State is respected in all other States and countries into which the property may come. * * * It would certainly be very inconvenient if such mortgages, fairly made in Massachusetts, should be held invalid in Connecticut in respect to movable property which may be daily passing to and fro along the dividing lines between the States." This case is reported in the American Law Register, Vol. 12, page 759, and is highly approved by the annotator, who cites several authorities in its support.

The same point was decided by the Supreme Court of the United States in *United States Bank* v. *Lee*, 13 Peters, 107. There certain property, being in Virginia, was conveyed in trust to Richard Bland Lee for the benefit of Mrs. Lee. The title passed according to the Virginia law, but the property being subsequently removed to the District of Columbia, where, under a prevailing Maryland statute, such a transfer would not be good except upon certain conditions, which had not been complied with, the Court (CATRON, J.) said that "the statute had no reference to a case where the title has been vested by the laws of another State, but operates only on sales, mortgages and gifts made in Maryland." The following authorities are also directly in point: Hilliard Mortgages, 412; *Keenan* v. *Stimson*, 32 Minn., 377; *Ferguson* v. *Clifford*, 37 N. H., 86; *Jones* v. *Taylor*, 30 Vt., 42; *Bank* v. *Danforth*, 14 Gray, 123; *Martin* v. *Hill*, 12 Barb., 631; *Kanage* v. *Taylor*, 7 Ohio St., 134; *Wilson* v. *Carson*, 12 Md., 54; *Smith* v.

*McLean*, 24 Iowa, 322; *Hicks* v. *Skinner*, 71 N. C., 539; *Barker* v. *Stacy*, 25 Miss., 477; *Foust* v. *Runnell*, 62 Mo., 524.

The defendants, however, contend that they are protected by the sale under the attachment proceedings in the Virginia Court. They rely upon the case of *Green* v. *Van Buskirk, supra*, and insist that, under the act of Congress, full faith and credit must be given to the judgments of the Courts of a sister State. It is true, that the decision referred to was chiefly based upon that statute; but it must be observed that the record of such an adjudication has only (we quote from the opinion) "the same faith and credit as it has in the State Court from which it is taken," and that, "in order to give due force and effect to a judicial proceeding, it is often necessary to show by evidence outside of the record the predicament of the property on which it operated." Such was the course pursued by the Court in that case, and as we have seen that the title to the property had not passed according to the law of the *situs*, the attachment proceedings were sustained. If, however, it had appeared that at the time of the execution of the mortgage in New York the property was also there, but had been afterwards removed to Illinois, it cannot be doubted that the decision would have been otherwise. Happily, we have a case directly in point from the Supreme Court of Illinois, *Mumford* v. *Canty*, Vol. 50, 366. It is there distinctly held that "where personal property was mortgaged in the State of Missouri and permitted to remain with the mortgagor (contrary to the law of Illinois) after the maturity of the debt to secure which the mortgage was given, and upon being subsequently brought into Illinois was seized under an attachment in favor of a *bona fide* creditor of the mortgagor, the rights of the mortgagee (would) be determined by the law of Missouri," and the mortgagee was permitted to recover the property of the purchaser. Here, then, we have an express decision as to the *effect* which is to be given to such a judgment in the State in which it is ren-

dered, and it is only to this extent, and no further, that the judgment is conclusive in a sister State. To hold otherwise, would go beyond what the statute requires, and give the same effect to an attachment proceeding, which generally follows a proceeding which is strictly and technically *in rem*. Such is not the law. An attachment proceeding, though often spoken of as a proceeding *in rem*, "cannot be admitted to come within the strict meaning of that term. * * * The judgment is conclusive only upon the actual parties to the litigation and those in privity with them, * * * and they use the hold obtained by the seizure of specific property merely as a means of reaching and giving effect to the rights of parties, and neither claim nor exercise any controlling authority over the title of strangers, The same remark applies to replevin." 2 Black, Judgments, 801; Drake on Attachment, § 245; Dutchess of Kingston's Case, 3 Smith L. C., 2011. In his notes to the latter case, Judge HARE cites, with entire approval, the opinion of HALE, J., in *Woodruff* v. *Taylor*, 20 Vt., 65, in which it is said that the operation of such a proceeding "must be limited to the parties to it, and cannot in any manner affect the right or interest of any other person, having an independent and adverse claim to the goods," etc.

Having shown, we think, that the title perfected here was not lost by the removal of the property to Virginia, and that the record of the judgment in the attachment proceeding is only to be respected in so far as effect is given to it in that State, we cannot but assume, in the absence of any decision to the contrary, that the same principle of comity, so universally recognized and acted upon, likewise prevails in Virginia, and that even if these plaintiffs were suing in that jurisdiction they would be permitted to recover. This would seem all the more reasonable, as we have extended this very comity to a citizen of our sister State in a case precisely similar to the one under consideration. *Anderson* v.

109 — 2

*Doak*, 10 Ired., 295. There, a slave, being in Virginia, was mortgaged by its owner and the mortgage duly registered in Carroll County. It was never registered in this State, nor was it executed according to its laws. The slave came to this State and was attached by a creditor of the mortgagor. In an action of trover, brought by the mortgagee against the Sheriff, the plaintiff was permitted to recover.

It will be noted that we have discussed this question as if the plaintiffs were seeking redress in the Courts of Virginia. If we have shown that, according to what appears to be the entire course of judicial opinion, they would be entitled to recover there, *a fortiori* can they recover in the Courts of this State when they have acquired jurisdiction over the parties?

To the foregoing authorities we will add a recent decision of the Court of Appeals of New York. In that case (*Edgerly* v. *Bush*, 81 N. Y., 199), B. executed to plaintiff a chattel mortgage upon a span of horses, both parties then residents of New York. B. subsequently took them to Canada, where they were sold by a regular trader dealing in horses, the purchaser buying in good faith. Under the laws of Canada property cannot be reclaimed from one so purchasing without refunding the price paid. Defendant, a resident of this State, bought the horses in Canada from such purchaser and they were left in Canada. Upon refusal of defendant to deliver them, the plaintiff sued for their conversion. The Court held (FOLGER, C. J., delivering an elaborate opinion) that the plaintiff was entitled to recover.

We are of the opinion that his Honor very properly overruled the demurrer; but he should have given the defendants an opportunity to answer. *The Code*, § 272; *Moore* v. *Hobbs*, 77 N. C., 65; *Bronson* v. *Insurance Co.*, 85 N. C., 411.

Modified and affirmed.