## DAVIES et al. v. THOMPSON.

No. 7651—Opinion Filed Sept. 26, 1916.

(160 Pac. 75.)

**1. Judgment—Validity—Collateral Attack.**

An action was instituted in the district court of Montana against E. H. Thompson, and a horse belonging to C. E. Thompson was attached in said action. C. E. Thompson was a non-resident, and no service of process of any kind was had or attempted on him. The court made an order reciting that an immediate sale of said horse was necessary in order to conserve the interest of the parties to the suit and directed the sheriff to make sale of said horse, after giving two days' notice by posting up notices of the time and place of the said sale in three public places in said county. Held, the actual owner of the horse is not bound by said sale and can attack said proceedings collaterally.

**2. Attachment—Process—Service.**

The court in an attachment action does not acquire jurisdiction to pass absolutely upon the rights of the parties until the defendant has been given legal notice, either actual or constructive, to appear and defend.

**3. Judgment—Conclusiveness—Persons Concluded.**

Notices being limited to the debtor, the attached property being proceeded against only as his, and the judgment being against it only as such, the debtor and his privies are concluded. All who are parties to the action are bound, but only the rights of property of the debtor and his privies in the attached property which is condemned and sold are affected by the proceedings.

(Syllabus by Mathews, C.)

Error from County Court, Tulsa County: J. W. Woodford, Judge.

Action by C. E. Thompson against T. A. Davies and another. Judgment for plaintiff, and defendants bring error. Affirmed.

L. J. Martin and Baldwin & Spradling, for plaintiffs in error.

Poe, Hindman & Lundy, for defendant in error.

Opinion by MATHEWS, C. C. E. Thompson will be designated as plaintiff, and T. A. Davies as defendant.

This is an action in replevin instituted in the county court of Tulsa county for the recovery of a certain race horse named "Palatable." Defendant answered by general denial, and further alleged that he had purchased the horse in controversy from one S. Ambrose through the office of the British Columbia Thoroughbred Association of Vancouver for $700, without any knowledge of any claims of plaintiff to said horse; that on the 21st day of September, 1912, in the district court of the Third judicial district of Montana, in an action wherein one William Gemmell was plaintiff and one E. H. Thompson was defendant, an order was issued by the court directing the sheriff to make a sale of the horse in controversy and that on the 23d day of September, 1912, the said sale was had and the said horse bought in by said William Gemmell, copies of said order of the sheriff's certificate of sale being attached to said answer. To this answer the plaintiff replied by general denial.

At the trial the plaintiff, C. E. Thompson, testified that he had owned the horse in controversy about three years, and that between two and three years before the trial he let a man by the name of Jackson take the horse to Butte, Mont., to race him; that he next heard that Jackson had mortgaged the horse but that he did not authorize him to do so; that he had never disposed of the horse and still owned him; and that he found the horse in Tulsa in possession of defendants.

The defendant then offered in evidence the following "order" and "certificate of sale."

"In the District Court of the Third Judicial District of the State of Montana, in and for the County of Deer Lodge. William Gemmell, Plaintiff, v. E. H. Thompson, Defendant. No. 3064. Order. Upon reading the affidavit of William Gemmell, the plaintiff in the above-entitled action, and it appearing therefrom and from the records and files in the above-entitled action that certain property has been attached, and is now in the custody of the sheriff of Deer Lodge county, under a writ of attachment issued out of the above-entitled court in the above-entitled action, and it appearing to the court satisfactorily that an immediate sale of said property is necessary in order to conserve the interests of the parties thereto. And it appearing from the affidavit aforesaid, that the delay necessary to give notice of the application for this order and· of the sale

of said property would cause material destruction in the value thereof and material loss; both to the plaintiff and the defendant above named. And it also appearing that the defendant is outside of the state of Montana, and that it is impossible to give notice of the hearing of this application and of said sale.

"It is therefore ordered, and this does order that the sheriff of Deer Lodge county make a sale of said property on Monday, the 23d day of September, A. D. 1912, and that said sale be made without notice to said defendant, but that notice of the said sale be given by posting notices in writing of the time and place of said sale in three public places in the city of Anaconda, in Deer Lodge county, Montana, for two days prior to September 23, 1912, and that the proceeds of said sale be paid into court, pending the determination of the above-entitled action by final judgment or otherwise.
"George B. Winston, Judge.

"Dated this 21st day of September, A. D. 1912."

"Certificate of Sale.

"I, James O'Keefe, sheriff of the county of Deer Lodge, state of Montana, do hereby certify, that under and by virtue of an order issued out of the district court of the said county of Deer Lodge in a certain action lately pending in said court at the suit of William Gemmell, plaintiff, against E. H. Thompson, defendant, attested the 21st day of September, A. D. 1912, by which I was commanded to make the sum of nine hundred dollars ($900) with interest and costs, to satisfy the judgment in said action out of the personal property of said defendant, if sufficient personal property could be found, all as more fully appears by the said order, reference thereunto being hereby made; I have levied on and on the 23d day of September, A. D. 1912, at the race track in the county of Deer Lodge, state of Montana, duly sold at public auction, according to law, and after due and legal notice, to William Gemmell, who made the highest bid therefor at such sale, for the sum of seven hundred dollars ($700) in lawful money of the United States, which was the whole price paid therefor, all the right, title and interest of the said judgment debtor, E. H. Thompson, in and to the following described personal property, to-wit: One chestnut stallion, two years old, no brand, named 'Palatable,'; one bay gelding, named C. W. Kennon, no brand; one bay mare, star in face, named Ourlast, no brand.

"Dated this 23d day of September, A. D. 1912. James O'Keefe, Sheriff of Deer Lodge County, State of Montana. W. A. McAndrews, Undersheriff."

The plaintiff made the following objections to the introduction of the same, which the court sustained:

"We object to the introduction of the exhibit as offered for the reason that it appears upon its face that it is not a final order or

decree; second, that it appears upon its face that it is only an interlocutory order and not made or based upon the merits of the cause; and third, it appears upon its face that the court had acquired no jurisdiction over the person or subject-matter or the res or horse attempted to be sold thereunder."

No further evidence was introduced by either party, and the judgment was rendered for plaintiff, from which defendants appeal.

The only question presented here by appellants is the correctness of the action of the trial court in excluding the above records of the said Montana court. As we view the case it is immaterial whether the said records were introduced or not, as the results of this action should have been the same, even if these records had been admitted in evidence, although we are of the opinion that the action of the court in excluding the same was correct; at least upon the last objection urged.

It will be noted the Montana action was against "E. H. Thompson," a nonresident. The property attached belonged to "C. E. Thompson," who was also a nonresident. The kind of service had is not disclosed, but it is presumed, if any was attempted, it was by publication. As C. E. Thompson was not a party to the Montana action it follows no service of any kind was attempted as to him.

It is urged on behalf of the plaintiff that the Montana court acquired no jurisdiction over the horse in controversy, as the records show that if any proceeding had been instituted that it was not against the plaintiff, C. E. Thompson, and therefore not binding upon him. The defendant urges that as the plaintiff only replied to their answer by general denial, that thereby nothing was put in issue except the existence of the record, and consequently a want of jurisdiction in the court to render the judgment cannot be shown under such plea. As said before this becomes immaterial when it is considered that even if the proffered records had been received in evidence it would have had no effect against C. E. Thompson, as the records offered show that they have nothing to do with C. E. Thompson, and therefore do not bind him.

The next proposition advanced by the defendants is that the sale of the property was an action in rem, and that the sale under this order was valid, regardless of who was the owner at that time or the lack of service. This contention, with the one advanced by plaintiff, set out above, are based somewhat upon the same principle and will, to a certain extent, be discussed together.

While we have been unable to find any de-

cision of this court bearing directly upon the points raised, yet we believe the general principles laid down in the well-considered case of Ballew v. Young et al., 24 Okla. 182, 103 Pac. 623, 23 L. R. A. (N. S.) 1084, followed and discussed in Bilby v. Jones, 39 Okla. 613, 136 Pac. 414, practically decides the issues in the case at bar against defendant's contentions.

In the case of Ballew v. Young, an attachment was sued out and levied upon real property. The defendant was a nonresident, and the publication affidavit and notice was invalid, but the plaintiff there insisted that notwithstanding those facts such defects did not defeat the court's jurisdiction over the property attached so as to render a judgment thereon a nullity and subject to collateral attack. This is practically defendant's contention in the case at bar, but this court, while admitting that there was a conflict in the authorities on that point, there quoted with approval 4 Cyc. 814, as follows:

"In some jurisdictions, it has been held that the court acquires jurisdiction over the property by a valid levy thereupon, and its judgment in regard thereto is binding until reversed on appeal, or set aside in some direct proceeding for that purpose, but the weight of authority, if not for reason, is to the effect that the jurisdiction acquired by the seizure of the property is not to pass absolutely upon the rights of the parties, but only to pass upon such right after defendant has been given an opportunity to appear and defend; and, where this view is maintained, a judgment, rendered without the notice prescribed by law against a defendant who has not appeared, is deemed absolutely void, and open to collateral attack."

If a judgment rendered in an attachment proceeding, wherein the service upon defendant was attempted by publication, but proved to be defective to the extent that it was held void, is subject to collateral attack, as is stated in Ballew v. Young, it equally follows that in an attachment action where there was no attempt at service upon the owner of the property the judgment must also be void and subject to collateral attack.

In the case of Troyer v. Wood, 96 Mo. 478, 10 S. W. 42, 9 Am. St. Rep. 367, we find the following discussion of the principles involved in the case at bar:

"It is a principle of universal justice that no one shall be condemned in his person or property without notice, and opportunity to be heard in his defense. Notice is therefore essential to the jurisdiction of all courts; and the rule which requires that it be given to the party whose interests and rights are sought to be affected by judicial proceedings is as old as the law itself. A judgment with-

out notice given, without opportunity to be heard, possesses none of the attributes of a judicial determination; it is simply judicial usurpation and oppression; a mere arbitrary edict, based upon an ex parte statement and entered upon the records of the courts in defiance of the maxim audi alteram parten. Such a judgment deserves not the name it bears and will not be respected and upheld in any forum where right and justice are administered. This doctrine is met with and approved at almost every turn you take in the broad fields of adjudication, and is announced by authorities too numerous for computation. Nations v. Johnson, 24 How. 203 (16 L. Ed. 628); Walden's Lessee v. Craig, 14 Pet. 154 (10 L. Ed. 393); Webster v. Reid, 11 How. 437 (13 L. Ed. 761); Galpin v. Page, 18 Wall. 350 (21 L. Ed. 959); Windsor, v. McVeigh, 93 U. S. 274 (23 L. Ed. 914); Earle v. McVeigh. 91 U S. 503 (23 L. Ed. 398; Pennoyer v. Neff, 95 U. S. 714 (24 L. Ed. 565); Rockwell v. Nearing, 35 N. Y. 302; Mason v. Messenger, (17) Iowa, 261; Freeman on Judgts. (3d Ed.) secs. 117, 118, 495; Hitchcock v. Aicken, 1 Caines (N. Y.) 473; Blackwell on Tax Tit. 213.

"But notice may be either actual or constructive and the state possesses the power to substitute service by publication in lieu of personal service; but such substituted service, when authorized or permitted by law, is as much an element of jurisdiction as is personal service where trial is the only method of service prescribed. In re Empire City Bank, 18 N. Y. 199. And proceedings in rem or quasi in rem are not exempt from the operation of the rule which makes service of notice in some form an essential of jurisdiction. Cooley's Const. Lim. (2d Ed.) 498, 499, 500, and cas. cit.; Wells on Jur. sec. 88; Wade on Notice (2d Ed.) secs. 1144, 1161; Waples' Proc. In Rem. secs. 88, 570 et seq. and cas. cit.; Woodruff v. Taylor, 20 Vt. 65; Denning v. Corwin, 1 Wend. 647; Freeman v. Thompson, 53 Mo. 196, and cas. cit."

While the case last quoted involved a judgment for taxes, yet a judgment for taxes is the same in effect as judgments in other actions. Mayo v. Ah Loy, 32 Cal. 477, 91 Am. Dec. 595.

In the case of National Bank of St. Joseph v. Peters et al., 51 Kan. 62, 32 Pac. 637, it is said:

"Notice being limited to the debtor, the attached property being proceeded against only as his, and the judgment being against it only as such. the debtor and his privies are concluded. All who are parties in the action are bound. but only the rights of property of the debtor and his privies in the attache i property which is condemned and sold are affected by the proceedings."

We take the following from the case of Bank of Colfax v. Richardson. 34 Or. 518. 54 Pac. 359. 75 Am. St. Rep. 664:

"Under our system an attachment is merely auxiliary to the main action, and there is no difference in the proceedings thereon in an action brought against a nonresident, upon whom service is necessarily made by publication, and in one brought against a resident of the state, in which personal service is had. In either case the proceedings on attachment have nothing to do with the merits of the cause of action or the jurisdiction of the court to try and determine the controversy between the parties. If personal service is had, the cause becomes a mere action in personam, with the added incident that the property attached remains liable for any judgment the plaintiff may recover. But, if service is had by publication, and there is no appearance for the defendant, the action is practically a proceeding in rem against the attached property, the only effect of which is to subject it to the payment of the amount which the court may find due the plaintiff. Where no personal service is had. the res is brought within the power and control of the court by a seizure under a writ of attachment, but the right to adjudicate thereon is asquired only by the publication of the summons. It is the substituted service, and not the seizure, which gives the court jurisdiction to establish by its judgment a demand against the defendant, and to subject the property brought within its custody to the payment of that demand. In other words, the authority to hear and proceed to judgment depends upon the service of the process and actual seizure of the thing to be concluded by the judgment, and not upon the regularity of the proceedings by which the control of the property was acquired. When, therefore. the court has the de facto custody of the property by virtue of a de facto writ of attachment, and a right to determine whether such property shall be subject to the payment of plaintiff's demand by virtue of constructive service of process, it has full and complete jurisdiction in the premises, and subsequent errors or irregularities in the proceedings will not be available on collateral attack. A judgment founded on service of process by publication, is of course, ineffectual, unless it is an adjudication concerning property which the court has in its custody under some lawful process, because there is nothing upon which it can operate; but where the property has been actually seized and brought within the control of the court by some process authorized by law, and the right to determine its liability for the demands of the plaintiff is subsequently acquired by publication, an error of the court in determining the status of the property, or its liability, or the validity of the attachment, can, it seems to us, no more affect the jurisdiction, under a statute like ours, than an erroneous decision as to the amount of plaintiff's demand. or any other error in the case. Van Fleet, Coll. Attack, 257, 838; Paul v. Smith. 82 Ky. 451; Barelli v. Wagner, 5 Tex. Civ. App. 445. 27 S. W. 17; Thompson v. Eastburn. 16 N. J. Lay, 100; Diehl v. Page. 3 N. J. Ep. 43.

"There is much conflict in the authorities

generally as to whether the statutory prerequisites to the issuance of writs of attachments are jurisdictional, and must affirmatively appear to protect the proceedings from collateral attack, or whether, in the absence of any showing in the record to the contrary, it will be presumed that the steps necessary to vest the court with jurisdiction were taken. Mr. Waples states with apparent confidence that all the statutory requirements are jurisdictional, and are not to be presumed after judgment, even on a collateral attack, and cites a large number of cases which more or less directly support the text (Waples, Attach. 625); while Mr. Works, with equal confidence, says that, while there are authorities holding that such proceedings are special, and that no presumptions in favor of the jurisdiction of the court can be indulged, 'the clear weight of authority and reason is to the contrary' (Works, Courts & Jur. p. 547); and this seems to be the view of Judge Van Fleet, as will be seen by reference to the citation from his work on Collateral Attack, already made." Ward v. Boyce, 152 N. Y. 191, 46 N. E. 180, 36 L. R. A. 549; Yarbaugh v. Pugh, 63 Wash. 140, 114 Pac. 918, 33 L. R. A. (N. S.) 351; 2 R. C. L. sec. 4, p. 803.

Now as to defendant's contention that as the horse was sold as perishable property under a chambers order of the Montana court, a sale under such an order operated to give the purchaser at said sale a good title notwithstanding the horse may have belonged to plaintiff, and not to E. H. Thompson, the defendant in that action.

Counsel has cited many respectable authorities (4 Cyc. 716, Young v. Kellar, 94 Mo. 581, 7 S. W. 293, 4 Am. St. Rep. 405, Megee v. Beirne, 39 Pa. 50, Millard v. Hall, 24 Ala. 230, and O'Brien v. Norris, 16 Md. 122, 77 Am. Dec. 284), which seems to support his contention, but upon this point there are many authorities to the contrary, and we believe the holding in the case of Ballew v. Young, supra, upon the general principle there laid down that a judgment rendered in an attachment proceeding wherein the service by publication was void is subject to collateral attack, is equally applicable to the point here under consideration. There was no service of summons, either actual or constructive, upon C. E. Thompson; therefore as to him the attachment proceedings were void and open to collateral attack.

In the case of Sleeper v. Killion, 166 Iowa, 205, 47 N. W. 314, the court says:

"Men are known, and their identity fixed, by the name by which they are known. When addressed by name, they respond as segregated individual entities. When not so addressed, they as a rule, are not expected or required to respond. In nearly every state in which courts acquire jurisdiction by writ, summons, or process, it is required that the paper, on the service of which the court assumes a right to act, must be addressed to the party summoned, by his true name, or by the name by which he is generally known. It has been uniformly held that a writ, summons, or process to one, but served on another, gives the court no jurisdiction of the person served, although he be the real party to the suit, and the one against whom relief is sought."

In the case of D'Autremont v. Anderson Iron Co., 104 Minn. 165, 116 N. W. 357, 17 L. R. A. (N. S.) 236, 124 Am. St. Rep. 615, 15 Ann. Cas. 114, it was held that a summons served by publication, designated "George H. Leslie" as defendant, was fatal, and conferred no jurisdiction upon the court to adjudicate any rights of "George W. Leslie." The court says:

"Though the partition suit was a proceeding in rem, the mere fact that the court acquired jurisdiction over the subject-matter therof, the land, did not authorize it to adjudicate the rights or interests of parties, in the absence of proper service of summons upon them."

The court further said:

"The reasons for disregarding the error where there is personal service upon the right party do not apply where the only service is by publication against a nonresident of the state."

Further the court says:

"If the error in the name is jurisdictional, as we hold, a judgment entered is void, and to adopt the contention of appellant would result in compelling the defendant in a particular case to waive the want of jurisdiction in the court to enter judgment against him and to come to this state and litigate the cause on its merits. This the court has no right to do. The law providing for the manner of acquiring jurisdiction over nonresidents is plain, and should not be ignored, even in a case of apparent hardship."

In Klondike Lumber Co. v. Bender Wagon Co., 71 Ark. 339, 75 S. W. 855, the precise question is involved. The case was an appeal from a judgment in an action of replevin. The court, in its opinion, says:

"The title of the Bender Wagon Company rested upon a sale made by virtue of an order of the circuit judge in vacation. Whether this was a valid sale and passed the title of the lumber was the question raised by the action of replevin. If the sale was valid, then the wagon company was entitled to the lumber, otherwise not."

The court, further passing upon the question, said:

"The only remaining question for us to determine is whether the sale of the lumber made under the order of the circuit judge in vacation was a valid sale. The order for

the sale was, as before stated, made in an action brought in the circuit court by Williams Bros. against the Long Pine Lumber Company to enforce a lien for labor upon the lumber replevied in this action. Now we find in the statute regulating the proceedings for the enforcement of laborers' liens no provision authorizing the sale of the property by an order of the judge, made in vacation, and there is room for doubt as to whether the judge in vacation can order such a sale in actions of that kind. But there is a provision in the statute regulating proceedings in actions of attachment authorizing the judge in vacation to order the sale of perishable property, and this is no doubt the statute under which the judge acted in this case. That section provides that 'no such sales shall be made in vacation without reasonable notice in writing to the opposite party or his attorney, if either of them reside in the county in which the cause is pending, of the time and place of the application therefor.'

"Now, the Long Pine Lumber Company was the party sued in that case, but the evidence shows, and the court found, that this company was not the owner of the lumber sold. The lumber was owned by the Klondike Lumber Company, and that company was not a party to the suit, until after the order for the sale of the lumber was made, and had no notice of the application for the sale of the lumber. Under these circumstances the sale of the lumber did not affect any right or interest which the Klondike Lumber Company had in the lumber. The sale did not affect their title. The company, after the sale, still owned the lumber, subject, of course, to any valid liens existing against it, and had the right to recover the same from the purchaser at the sale, for the purchaser acquired only the right, title, and interest therein owned by the Lone Pine Lumber Company, the defendant in the action. Crowell v. Barham, 57 Ark. 195 (21 S. W. 33)."

In the instant case it will be seen that the record sought to be introduced recites:

"I have levied on, and on the 23d day of September, 1912, at the race track in the county of Deer Lodge, state of Montana, duly sold at public auction, according to law, and after due and legal notice to Wm. Gemmell, who made the highest bid therefor, at public sale for the sum of $700 in lawful money of the United States, which was the whole price paid therefor, all the right, title, and interest of the said judgment debtor, E. H. Thompson, in and to the following described personal property."

The certificate of sale also recites that the sale was made for the reason that he was commanded to make the sum of $900 to satisfy the judgment against "E. H. Thompson." Hornthall v. Burwell, 109 N. C. 10, 13 S. E. 721, 13 L. R. A. 740, 26 Am. St. Rep. 556.

For the reasons given, we recommend that the judgment be affirmed.

By the Court: It is so ordered.