## ASSOCIATES DISCOUNT CORPORATION v. KENNETH McKINNEY AND MITCHELL FINANCE COMPANY.

(Filed 19 October, 1949.)

**1. Chattel Mortgages § 8b—**

The rule that the lien of a chattel mortgage properly registered under the laws of the state in which it was executed will be enforced under comity is subject to modification by the statutes of the state in which the lien is sought to be enforced when the full faith and credit clause of the Federal Constitution is not invaded.

**2. Same—**

The burden of proof is on the party claiming under the lien of a chattel mortgage registered in another state to show a valid lien under the laws of such other state and that his case is within the protection of the rule of comity as modified by the statutes of the state in which he seeks to enforce the lien.

**3. Same—**

Instructions susceptible to the interpretation that if the mortgagee used due diligence in ascertaining the identity and residence of the mortgagor, the lien would be valid, *held* favorable to the mortgagee and not erroneous on its appeal, since the validity of the registration depends upon the ultimate fact of record in the proper county and not upon the diligence addressed to its accomplishment.

**4. Same—**

Since the burden is upon one claiming under the lien of a chattel mortgage registered in another state to show that the lien is valid in such other state and also that it is enforceable in this State under the rule of comity, an instruction to the effect that if the chattel had come to rest in North Carolina and the mortgage had not been registered here (G.S. 47-20) the lien of the mortgage recorded in such other state would not be enforceable here, but if the chattel mortgage was properly registered in the state in which executed no one could get title free from such lien, *is held* favorable to the mortgagee and cannot be held for prejudicial error upon its appeal.

**5. Same—Question of whether chattel mortgage was properly registered in accordance with the laws of the state in which executed held for jury.**

Plaintiff's evidence tended to show that the automobile was purchased in another state, that the purchaser, purporting to be a resident of such other state, executed a conditional sales contract which was duly registered under its laws. Defendant introduced the deposition of the purported purchaser that he had not purchased the car and had not executed the conditional sales contract and that he resided in a third state. The laws of the state wherein the chattel mortgage was registered require that the instrument be recorded in the county in which the mortgagor resides. *Held:* The question of proper registration was largely one of fact, and the verdict of the jury in plaintiff's favor is determinative of the rights of the parties.

.

PLAINTIFF'S appeal from *Pless, J.,* April Term, 1949, MITCHELL Superior Court.

The plaintiff, an Indiana corporation, claims to be the owner of an automobile, in the possession of the defendant McKinney, by virtue of a conditional sales contract executed January 10, 1946, by one Vance Ledford in security of a purchase price note given to a dealer, Jerry Lynch, in Detroit, Wayne County, Michigan, and transferred by Lynch to it.

The conditional sales agreement was registered in Wayne County, Michigan, the purported residence of the plaintiff, (under the recitals in the contract and simultaneous oral statements, on January 16, 1946). The defendant McKinney denies plaintiff's title; says he is an innocent purchaser for value without notice; denies that Ledford executed the conditional sales contract, and contends that the registration thereof (for reasons which will appear *infra* in the analysis of the case), was insufficient to give notice to him as a purchaser for value or to his codefendant, the Mitchell Finance Company, to whom he executed a mortgage on the car at the time of its purchase.

The defendant Mitchell Finance Company adopts the answer of its codefendant.

The summary of evidence here undertaken is directed to an understanding of the decision and the ground on which it is based.

The plaintiff's evidence tends to show that Vance Ledford came to the place of business of Jerry Lynch, an automobile dealer in Detroit, Michigan, on January 9, 1946, and contacted Theodore C. Purol, an agent and salesman in charge. After looking over several Plymouth cars, Ledford finally selected one which he expressed a desire to buy. The price was agreed upon and Purol told him that if the finance company (this plaintiff) would pass upon the credit and agree to finance the deal, the sale would be closed; and advised him to come back next day. Ledford deposited $400.48 conditionally upon the purchase price and gave a "credit statement" to the effect that he was 25 years old, resided at 1425 Times Square, Detroit, and had formerly resided at 1202 Lincoln Street, Knoxville, Tennessee, for approximately 20 years; that he was now working for a gas station—had been there only a short time, having theretofore been in the army as a paratrooper. This information was given the finance company over the telephone that afternoon; and on the same afternoon the company called back and advised that it would finance the deal.

Ledford returned the next day, January 10, and the sale was closed, Ledford signing a note and conditional sales contract securing the same, now in controversy. In the conditional sales contract the residence of Ledford is given as above stated. This note and contract were immedi-

ately assigned to the plaintiff corporation and registered in Wayne County on the 16th day of January, 1946. Default having been made in the installments, the plaintiff undertook to locate Ledford, who was not to be found at the place of residence given.

Certificates of title introduced, some by plaintiff and some by defendants, and some by both, indicate that the automobile, since its purchase at Detroit, had been for a long time out of the State of Michigan and in various places for substantial periods of time and in the hands of a number of dealers and purchasers in Tennessee and North Carolina.

An automobile, however, of the description contained in the contract and bearing the same serial numbers, was found in the hands of the defendant McKinney in Mitchell County, North Carolina, and the plaintiff contends it is the car sold to Ledford. Title to a car of practically the same description, serial and motor numbers was registered in the name of Howard C. Hurd, Kingsport, Sullivan County, Tennessee, March 25, 1946; and title to what appears to be the same car was registered in the name of Virginia Silver, June 11, 1946, who gave her "address" as Circle Trailer Camp, Kingsport, Sullivan County, Tennessee.

Application for the registration of the title of Kenneth McKinney was made 19 February, 1947, in which the source of ownership is given as purchased from Virginia Silver, Kingsport, Tennessee, on 19 February, 1947, and in which there is declared a lien in favor of Mitchell Finance Company, Inc., Spruce Pine, North Carolina, in the sum of $445.68, as a conditional sales contract.

The defendants' evidence (and it is not necessary to distinguish in which behalf it is given) tended to show that McKinney purchased the automobile in his possession from Virginia Silver through automobile dealers Kyle Riddle and Early Hoyle in Mitchell County, N. C., at their place of business where it had been stored for sale, paying therefor $350 in cash and a 1939 Plymouth automobile valued at $700. Defendants' witness Kyle Riddle, the dealer from whom defendant McKinney purchased from Virginia Silver, stated that he had had the car for two weeks; that he knew Virginia Silver before that; that she lived in Avery County, right at the Mitchell County line (N. C.); she had been living in North Carolina six months . . . it may have been a year, but he would say at least six months . . . prior to the sale and had been using the automobile for pleasure.

On cross-examination he said that he had known Virginia Silver since 1917; that she had lived in Oak Ridge, Tennessee, but then lived in Avery County.

Deposition of Vance Ledford was introduced by the defendant. In it Ledford stated that he lived in Johnson City, Tennessee; that he did not execute a note to one Jerry Lynch in the City of Detroit, Wayne County,

Michigan, in the sum of $723.24; that he did not execute the conditional sales contract on a 1941, six-cylinder deluxe model Plymouth automobile of the serial and motor numbers as claimed by plaintiff. He testified that he executed neither the note nor the sales agreement and had never executed any sales agreement or note to Jerry Lynch. That he was not in Detroit, Michigan, January 10, 1946, and never did own the automobile described above; and never conveyed such an automobile to Howard Hurd, of Kingsport, Tenn. On cross-examination Ledford stated that he did not know Mr. Hurd; that he was in Michigan in 1930; that he had owned plenty of Plymouth automobiles which he got at various places; that he used to be in the used-car business; the last Plymouth he owned was a 1941 coupe which he got from Bill Reece; that he got a Plymouth car last year which was a 1946 model. In 1946 he was in the used car business in Johnson City, Tenn. During that time he handled various Plymouth automobiles but never made this transaction. The witness was permitted to write his name for comparison with the signature to the conditional sales contract and this was made a part of the deposition.

Upon this evidence the case was submitted to the jury on the following issues:

"1. Is the plaintiff, Associates Discount Corporation, the owner of and entitled to the possession of the Plymouth Sedan, Motor No. D12451008, Serial No. 15118353, as alleged in the complaint?

"Answer: No.

"2. What was the reasonable market value of the said automobile on May 27, 1947?

"Answer: $875.00."

We note the following portion of the instruction to the jury to which the plaintiff addresses an exception:

"Gentlemen of the jury, a person making any kind of business transaction, he cannot depend upon the law to protect him unless he uses due diligence and interest in his own behalf, to see that he is not defrauded. It was the duty of Jerry Lynch, if someone went and told him that his name was Vance Ledford, to ascertain that he is Vance Ledford, to use due diligence in his own behalf, and to ascertain if he is, and if he lives on such and such a street, it is up to him to learn if he is living there. If somebody who says his name is Vance Ledford, and he deals with him, and takes his word for it, and a fraud is perpetrated on him it is his responsibility. It is his duty to ascertain with reasonable certainty that the person claiming to be Vance Ledford is Vance Ledford, and that he lives on such and such a street."

Plaintiff also excepted to the following instruction:

"If you find that the car came to rest in North Carolina, so to speak, and that at the time of coming to rest, that is, it came here at least for more than temporary purposes, that the chattel mortgage given to Jerry Lynch had not theretofore, and while the purchaser was a resident of the State of Michigan, there in Detroit, and while the automobile in question. was there in Detroit, if he had not while those things existed recorded that chattel mortgage there, then Kenneth McKinney's title would be good."

The plaintiff moved to set aside the judgment for errors occurring in the course of the trial. The motion was declined and plaintiff excepted. To the ensuing judgment on the verdict the plaintiff objected, excepted, and from it appealed, assigning errors.

*W. C. Berry and Charles Hutchins for plaintiff, appellant.*

*C. P. Randolph and W. E. Anglin for defendant Kenneth McKinney, appellee.*

*Fouts & Watson for defendant Mitchell Finance Company, appellee.*

SEAWELL, J.   The pertinent North Carolina recording statute is G.S. 47-20. It provides that in case of personal estate where the donor, bargainor or mortgagor resides out of the State, the registration, to be valid, must be had "in the county where the said personal estate or some part of the same is situated." The statute was amended by the Session Laws of 1949, Chapter 1129, but since the transaction under review transpired before the ratification of that act it has no bearing upon the rights of the parties.

Encyclopedic references and collations of authority in annotated cases support the proposition that in the absence of a statute in the State of attempted enforcement a mortgage or conditional sales contract made in another state and timely and properly registered according to the laws of that state will be respected elsewhere on the principle of comity and there enforced. 14 C.J.S. 607, sec. 15; *Mercantile Acceptance Co. v. Frank,* 265 P. 190, 57 A.L.R. 696, Anno., p. 702; *Hornthal v. Burwell,* 109 N.C. 10, 13 S.E. 721; *Applewhite Co. v. Ethridge,* 210 N.C. 433, 187 S.E. 588.

On the other hand it is generally conceded that where the full faith and credit clause of the Federal Constitution is not invaded, the State statute, to the extent it may modify that principle, is controlling. The State may extend that degree of comity it requires or none at all. "Comity is not permitted to operate within a State in opposition to its settled

policy as expressed in its statutes, or so as to override the express provisions of its legislative enactments;" *Credit Corporation v. Walters, ante,* 443, loc. cit., p. 445; citing *Applewhite Co. v. Etheridge, supra,* and *Southern Gem Coal Corp.,* 12 F. 2d 605.

The Michigan statute concerned requires that to be valid against subsequent purchasers for value the instrument, when made by a resident of that state, shall be filed and registered in the office of the register of deeds of the county where the goods or chattels are located and also where the mortgagor resides. Section 13424, Compiled Laws of 1929, as amended; Mason Supp. 1935.

The North Carolina statute lends itself to the interpretation that where they are made by nonresidents it intends to leave within its protection only those mortgages on personal property and similar lien contracts, (including conditional sales, G.S. 47-23), which are registered in the county of the *situs in this State,* whether that *situs* be acquired before or after the foreign registry. And that view is presented on this appeal.

The following cases, *q.v.,* touch upon this matter: *Discount Corp. v. Radecky,* 205 N.C. 163, 164, 170 S.E. 640; *Weaver v. Chunn,* 99 N.C. 431, 6 S.E. 370; *Bank v. Cox,* 171 N.C. 76, 87 S.E. 967; *Sloan Bros. v. Sawyer-Felder Co.,* 175 N.C. 657, 96 S.E. 39; *Truck Corp. v. Wilkins,* 219 N.C. 327, 13 S.E. 2d 478; *Applewhite Co. v. Etheridge, supra; Hornthal v. Burwell, supra.* In a very recent case, *Finance Corp. v. Clary,* 227 N.C. 247, 248, 41 S.E. 2d 760, the Court observes: *"Whether, as a general rule, a chattel mortgage executed by a nonresident on property then situated at the domicile of the mortgagor and duly recorded there must also be recorded in this State in order to be valid against subsequent purchasers, is not presented in this case."* (Italics supplied.) See *Finance Corp. v. Hodges, ante,* 580.

Since the defendant challenged the Michigan registry on its factual aspects and was successful before the jury, the necessity of discussion of this phase of the case does not arise; for if there was no valid registry in Michigan, there was none anywhere.

The defendant contends that the plaintiff has not carried the burden of showing by evidence of constituent facts that the conditional sales contract was registered in compliance with the Michigan statute—particularly with regard to the residence of the mortgagor, or maker of the contract.

Recording acts are inspired with the hope that actual notice of instruments affecting the title to personalty may reach the diligent purchaser by requiring the information to be recorded where it is most likely to be sought or found. The necessity of certainty and of effectiveness of the registration, however, has eliminated much controversy by substituting constructive notice for actual notice as sufficient, when the legal require-

ments incident to registration have been complied with. But back of these requirements lies a body of evidential fact affecting the validity of the registration. As to this, the courts can make no assumption.

It is clear that it is incumbent on the plaintiff who depends on a lien created in a state foreign to the forum of its attempted enforcement to show that it was valid in the state of registration, in order to invoke the principle of comity at all; and to further show that the facts supporting the registration bring the case within the protection of the rule as modified by the local state law. A more serious question arises as to how that burden may be carried. Since recording statutes operate *ex propria vigore* without deference to privity of title between the original mortgagor and the purchaser for value, it would seem that the recitals of residence contained in the instrument, and oral representations of the mortgagor in that respect, should be regarded as *res inter alia acta.* On this principle it is difficult to square the admission of parol evidence of the declarations of the mortgagor pending the negotiations with rules of evidence we ordinarily apply. But conceding for the purposes of decision that evidence of that character is available, the evidence was submitted to the jury upon its merits and the verdict was unfavorable to the plaintiff.

We do not find that the jury was misled by either of the exceptive instructions; in fact, we have the impression that both were more favorable to the plaintiff than it had reason to expect. In the first instruction above quoted, Judge Pless no doubt was attempting to give the philosophy of recording statutes, and his illustration was apt. From it, however, the jury might have received the impression that although the plaintiff may have selected the wrong county, his diligence in the matter might condone the error. But validity of the registration depends upon the *ultimate fact* of record in the proper county and not upon the diligence addressed to its accomplishment.

The second exceptive instruction (see above statement) was immediately followed and qualified by the following:

> "But if it were registered under those circumstances, that is, while Ledford lived in Detroit, and the automobile was there in Detroit, then there would be no way that Virginia Silver or Kenneth McKinney or anybody else could get a good title out of Detroit, and you would answer that issue YES, under those circumstances."

The exceptions are without merit.

Determination of the controversy lay largely in the realm of fact. The evidence was submitted to the jury and the issue answered favorably to the defendant. We find nothing in the record that would justify us in disturbing the result. We find

No error.